IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
APR 24 2007
J.T. NOBLIN, CLERK
BY_____ DEPUTY

**PENTHOUSE OWNERS ASSOCIATION, INC.**                    **PLAINTIFFS**

v.                                           CIVIL ACTION NO.: 1:07cv568 LTS-RHW

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**            **DEFENDANT**

## COMPLAINT
### JURY TRIAL REQUESTED

COMES NOW, Penthouse Owners Association, Inc. ("Plaintiff"), by and through counsel, and files this Complaint against Defendant Certain Underwriters at Lloyd's, London ("Lloyd's or Defendants") and alleges as follows:

### I.
### PARTIES

1. At all times material herein, Plaintiff was the owner of the Penthouse Condominiums whose address was 1515 East Beach Blvd., Pass Christian, Mississippi, 39571.

2. Defendant Certain Underwriters at Lloyd's London is a corporation organized and existing under the laws of England, but which does business throughout the United States, and which may be served with process by service on its agent for service of process, Wilson, Elser, Moskowitz, Edelman and Dicker, 150 East 42nd Street, New York, New York, 10017-5639 or on the Mississippi Insurance Commissioner, P.O. Box 79, Jackson, Mississippi, 39205-0079, pursuant to Miss. Code Ann. §83-21-1.

## II.
## SUBJECT MATTER AND PERSONAL JURISDICTION

3. This Court has jurisdiction over the subject matter and Defendant in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

## III.
## VENUE

4. Venue in this cause is proper in this Court pursuant to 28 U.S.C. § 1391, because this suit respects real property located exclusively in Harrison County, Mississippi and the conduct, acts and/or omissions upon which this cause of action is based occurred in substantial part in Harrison County, Mississippi, which is completely within the United States District Court for the Southern District of Mississippi, Southern Division.

## IV.
## FACTS

5. On August 29, 2007 Plaintiff owned several buildings at 1515 East Beach Blvd., Pass Christian, Mississippi. Plaintiff insured those buildings with Defendant.

6. Plaintiff purchased from Defendant Commercial Property Coverage naming it as the insured. The subject policy insured: Building No. 1 for $16,000, Building No. 2 for $3,500,000, and Building No. 3 for $52,000. The subject policy was in effect on August 29, 2005. A copy of the subject policy is attached hereto as Exhibit "A."

7. The subject policy provides "all risk" coverage for all "direct physical loss" of or damage to Covered Property.

8. This broad "all risk" coverage includes coverage for loss proximately and efficiently caused by hurricane wind as well as for objects driven by the hurricane wind.

9. For such coverage, Plaintiff agreed and paid Defendant an annual premium of $35,785.90. Plaintiff also agreed to pay a 5% hurricane deductible to ensure insurance coverage for any and all damage to the insured residence caused by a hurricane, including all damage proximately and efficiently caused by hurricane wind.

10. The Buildings insured by Plaintiff were near on the Gulf of Mexico, Plaintiff purchased the subject policy from Defendant for one of the primary purposes of insuring against any property damage that could proximately and efficiently result from hurricanes impacting the Mississippi Gulf Coast from the Gulf of Mexico.

11. On August 29, 2005, within the subject policy period, the Buildings insured were totally destroyed by Hurricane Katrina, a Category (4) Hurricane with wind gusts in excess of 150 miles per hour. The area where the insured property was located also sustained tornadoes, microbursts, mesocyclones, and other convective activity. These events caused an "direct physical loss" covered under the subject policy.

12. The "direct physical loss" sustained by Plaintiff to the insured property was proximately and efficiently caused by hurricane wind, tornadoes, microbursts, mesocyclones, and/or convective activity and occurred in the absence and/or independent of water, thereby triggering full coverage for all Plaintiff's hurricane losses.

13. Hurricane Katrina's devastating and catastrophic hurricane winds, tornadoes, microbursts, and mesocyclones occurred 4-6 hours before the peak hurricane storm surge, and destroyed Plaintiff's property prior to the arrival of storm surge from Hurricane Katrina.

14. Almost immediately thereafter, and in accordance with the subject policy provisions, Plaintiff notified Defendant of the covered loss and performed all obligations imposed on them by the policy.

15. However, Defendant failed to fairly, adequately, and sufficiently investigate and adjust Plaintiff's claims for hurricane damage caused by Hurricane Katrina.

16. In fact, almost one year after Hurricane Katrina, Defendant issued a denial letter (July 12, 2006) stating "Underwriters have now concluded their investigation of your claimed loss . . . they have determined there is no coverage for your claim because the complex was destroyed by flooding and flooding is expressly excluded under the Policy."

17. The Defendant did not make any of the aspects of its "investigation" known to Plaintiff or Plaintiff's representatives. Nor did the Defendant offer any explanation for the amount of time it took to complete its "investigation."

18. Defendant simply quoted the "water" exclusion from its policy in denying the claim.

19. The Defendant's denial did not reference the "Windstorm or Hail Percentage Deductible" which sets forth that wind damage is covered even if the property is later damaged by water. Said provision specifically states:

> The Windstorm or Hail Deductible . . . applies to loss or damage to Covered Property caused directly or indirectly by windstorm or hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

20. The Defendant's denial wrongfully assumed that no wind damage occurred to the insured buildings and also wrongfully assumed that an excluded cause rendered the insured buildings a total loss.

21.     Plaintiff's losses were significant. All structures were completely destroyed. The present day value of all damage to the insured buildings was $8,251,458.81.

## COUNT ONE
### NEGLIGENCE AND/OR GROSS NEGLIGENCE OF DEFENDANT

22.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs in this Complaint.

23.     Defendant had a duty under Mississippi law and pursuant to the policy of insurance it issued, to fully, fairly, adequately and correctly investigate and adjust Plaintiff's loss and claim for hurricane damages.

24.     Defendant breached that duty in the following non-exclusive particulars:

(1)     by denying Plaintiff's loss without conducting a complete, adequate, full, and fair investigation and adjustment of Plaintiff's claim for damage under the policy;

(2)     by denying Plaintiff's claims without knowing what caused the loss or undertaking an appropriate effort to find out;

(3)     by failing to pay Plaintiff for its hurricane loss;

(4)     by arbitrarily denying Plaintiff's loss under the anti-concurrent cause clause;

(5)     by denying Plaintiff claim for hurricane losses even though such losses were covered under the policy issued by Defendant;

(6)     by failing to acknowledge the true cause of loss resulting from Hurricane Katrina and/or ignoring evidence that proved that damages were caused by wind before any storm surge reached the insured's property;

(7) by interpreting its contract and/or policy of insurance in an arbitrary and capricious manner, and contrary to the plain meaning and intent of the policy in an effort to avoid, and intentionally withhold, coverage for losses caused by Hurricane Katrina;

(8) by failing to resolve ambiguities in its contract and/or policy of insurance in favor of coverage for losses caused by Hurricane Katrina, contrary to the law and public policy of the State of Mississippi;

(9) by denying coverage based on the "water" exclusion without sustaining its burden of proof that Plaintiff's losses were actually caused by "water;" and

(10) by other acts and omissions to be proven at trial.

25. Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiff's rights as an insured.

26. Defendant's negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiff economic damages.

## COUNT TWO
### BREACH OF CONTRACT AGAINST DEFENDANT

27. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in this Complaint.

28. Plaintiff entered into an insurance contract with Defendant in which it contracted for, purchased, and were entitled to receive full insurance coverage under the subject policy for all "direct physical loss" to the insured property.

29. Plaintiff's insured property was completely destroyed by Hurricane Katrina. The overwhelming meteorological and physical evidence at the scene established that insured property

was proximately and efficiently damaged by hurricane wind, and other convective activity prior to the arrival of any storm surge associated with Hurricane Katrina.

30. Defendant breached the subject policy, in the following non-exclusive particulars:

(1) by denying Plaintiff's loss without conducting a complete, adequate, full, and fair investigation and adjustment of Plaintiff's claim for damage under the policy;

(2) by denying Plaintiff's claims without knowing what caused the loss or undertaking an appropriate effort to find out;

(3) by failing to pay Plaintiff for its hurricane loss;

(4) by arbitrarily denying Plaintiff's loss under the anti-concurrent cause clause;

(5) by denying Plaintiff's claim for hurricane losses even though such losses were covered under the policy issued by Defendant;

(6) by delaying payment of Plaintiff's claims and converting monies rightfully due Plaintiff such that Defendant has now earned and will continue to earn investment income on said monies;

(7) by failing to acknowledge the true cause of loss resulting from Hurricane Katrina and/or ignoring evidence that proved that damages were caused by wind before any storm surge reached the insured's property;

(8) by interpreting its contract and/or policy of insurance in an arbitrary and capricious manner, and contrary to the plain meaning and intent of the policy in an effort to avoid, and intentionally withhold, coverage for losses caused by Hurricane Katrina;

(9) by failing to resolve ambiguities in its contract and/or policy of insurance in favor of coverage for losses caused by Hurricane Katrina, contrary to the law and public policy of the State of Mississippi;

(10) by denying coverage based on the "water" exclusion without sustaining its burden of proof that Plaintiff's losses were actually caused by "water;" and

(11) by other acts and omissions to be proven at trial.

## COUNT THREE
## BAD FAITH BREACH OF CONTRACT

31. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in this Complaint.

32. Defendant's actions as set forth above constitute the independent tort of bad faith refusal to pay an insurance claim in that Defendant denied a timely-reported and covered insurance claim without legitimate or arguable reason for doing so. Specifically, all losses for which Hurricane Katrina was the efficient proximate cause were covered under the insurance policy at issue, and full coverage was owing under Mississippi law. Defendant was fully aware of Mississippi law as it pertained to hurricane-related property damage and disregarded it nonetheless.

33. In denying Plaintiff's claim Defendant relied on confusing and/or intentionally ambiguous policy exclusions in order to defeat the reasonable expectations of the Plaintiff that their property would be covered by insurance for damages caused by a hurricane.

34. At all material times, Defendant owed to Plaintiff as policyholder, claimant and insured under the Policy, non-delegable, express and implied duties, to at all times and in all things, act in good faith and with fair dealing toward the insured. Along with the implied duty of good faith and fair dealing, Defendant owed at all times a duty to: (1) meet the reasonable expectations of the

-8-

Plaintiff as policyholder; (2) investigate the claim with the interest of the insured in mind and keeping the insured informed every step of the way; and (3) give as much if not more consideration to the financial interests of the insured, than they gave to their own financial interests.

35. Defendant breached the aforementioned duties, including the overarching duty to exercise good faith and fair dealing with Plaintiff as a policyholder, claimant and insured in the following, <u>non-exclusive</u> particulars, *inter alia*:

(1) tortiously and in bad faith failing to follow and apply the Defendant's underwriting guidelines in the marketing, underwriting, sale, issuance and delivery of the subject policy to Plaintiff;

(2) tortiously and in bad faith, failing to conduct a prompt, fair and thorough investigation of the Hurricane Katrina claim of Plaintiff;

(3) tortiously and in bad faith, failing to make a realistic evaluation of the subject claim and/or to realistically assess, adjust and pay for all losses caused by the covered windstorm;

(4) tortiously and in bad faith failing to promptly pay covered claims incurred as a result of the Plaintiff's claim;

(5) tortiously and in bad faith failing to acknowledge evidence that supported the fact that Plaintiff's claims were covered losses;

(6) regardless of whether Defendant's actions as described above and ultimate denial of Plaintiff's claim were unsupported by legitimate or arguable reason in fact or law, Defendant's misconduct is insufficient to constitute the "lying exception" applicable under Mississippi bad faith law;

(7) tortiously and in bad faith, and through a pattern and practice of systemic, institutional claim denial, failing to advise Plaintiff of a valid reason why their insurance claim was denied;

(8) by failing to acknowledge the true cause of loss resulting from Hurricane Katrina and/or ignoring evidence that proved that damages were caused by wind before any storm surge reached the insured's property;

(9) by interpreting its contract and/or policy of insurance in an arbitrary and capricious manner, and contrary to the plain meaning and intent of the policy in an effort to avoid, and intentionally withhold, coverage for losses caused by Hurricane Katrina;

(10) by failing to resolve ambiguities in its contract and/or policy of insurance in favor of coverage for losses caused by Hurricane Katrina, contrary to the law and public policy of the State of Mississippi;

(11) by denying coverage based on the "water" exclusion without sustaining its burden of proof that Plaintiff's losses were actually caused by "water;" and

(12) by other acts and omissions to be proven at trial.

34. Defendant's breach of the duty to exercise good faith and fair dealing was the direct and proximate cause of actual damages sustained by Plaintiff.

35. As a result of Defendant's breach of the duty to exercise good faith and fair dealing, bad faith denial of coverage, Plaintiff is entitled to a judgment against Defendant for actual, compensatory, consequential, bad faith and punitive damages in excess of the jurisdictional limit of this Court, plus court costs, and pre- and post- judgment interest at the legally allowable limit.

V.

## PRAYER FOR RELIEF

36.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

37.     As a direct and proximate result of Defendant's negligence, gross negligence, reckless disregard for Plaintiff's rights as an insured, breach of contract, breach of duty of good faith and fair dealing, bad faith and tortious breach of contract without a legitimate or arguable reason in fact or law, Plaintiff is entitled to the following relief:

> (A)    Payment for all contractual benefits for all coverages afforded to Plaintiff under the subject Defendant policy for damage to their insured buildings caused by Hurricane Katrina, with interest on all amounts due Plaintiff under it policy;
>
> (B)    Pre-judgment and post-judgment interest on the amounts owing to Plaintiff in contractual or policy benefits with interest, retroactive to August 29, 2005;
>
> (C)    Compensatory damages for economic damages suffered by Plaintiff as a proximate result on the denial of coverage. Plaintiff is entitled on its contract claims and consequential damages, including but not limited to the amounts Plaintiff expended or lost in trying to subsist without insurance benefits since August 29, 2005.
>
> (D)    Extra-contractual damages for Defendant's wilful, wanton, reckless, grossly negligent, and bad faith conduct, which arose to the level of an independent tort.

(E)     Punitive and exemplary damages for Defendant's tortious, malicious, wilful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort.

(F)     Any and all other relief the court may find appropriate .

Respectfully submitted this __23rd__ day of April 2007.

PENTHOUSE OWNERS ASSOCIATION, INC., Plaintiff

By: _____
SIDNEY A. BACKSTROM, MS Bar #99890

Of Counsel:

Richard F. Scruggs
Sidney A. Backstrom
David Zachary Scruggs
THE SCRUGGS LAW FIRM, P.A.
P.O. Box 1136
120-A Courthouse Square
Oxford, MS 38655
Phone: (662) 281-1212

Don Barrett
Marshall Smith
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095
Phone: (662) 834-2376

Mary E. McAlister
NUTT & McALISTER
605 Crescent Blvd., Suite 200
Ridgeland, MS 39157
Phone: (662) 898-7302

Dewitt M. Lovelace
LOVELACE LAWFIRM, P.A.
36474 Emerald Coast Pkwy., Suite 4202
Destin, FL  32541
Phone: (850) 837-6020

***ATTORNEYS FOR PLAINTIFF***