UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PENTHOUSE OWNERS ASSOCIATION, INC.                              PLAINTIFF

V.                                             CIVIL ACTION NO. 1:07cv568-LTS-RHW

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON                          DEFENDANT

### ORDER

This order disposes of a pivotal motion [111] for summary judgment filed by Defendant (Lloyd's).  Because of the nature of this order, the Court will not address at this time the motion [103] to strike and exclude expert testimony of R. Ralph Sinno or the numerous motions *in limine* filed by the parties in anticipation of the pretrial conference to be held on July 9.

Plaintiff (Penthouse) is the owner of Penthouse Condominiums, formerly constituting units in several buildings located at 1515 East Beach Boulevard in Pass Christian, Mississippi. The insured property was totally destroyed by Hurricane Katrina on August 29, 2005.  At the time of the storm, Penthouse maintained a flood insurance policy with Audubon Insurance Company, while Lloyd's provided "all risk" coverage subject to certain specific exclusions. From a review of the record, it appears that individual owners also carried insurance protection on their particular units.

Lloyd's states in its [112] memorandum supporting its motion for summary judgment that the motion is filed primarily for the purpose of bringing before the Court the punitive damages issue in light of the decision reached in *Broussard v. State Farm Fire and Casualty Co.*, 523 F.3d 618 (5th Cir. 2008).  In its [142] reply to Penthouse's [140] [141] response it changes gears somewhat by making the accusation that Penthouse has totally ignored the underlying contractual claim.  Yet the Court fears that Lloyd's may be more guilty of this offense.

It is axiomatic that each case must be considered on its own facts and that each contract of insurance must be judged on its own language in its entirety.  Indeed, Derrell Livingston, a claims adjuster for Crawford and Company, who initially investigated Penthouse's claim on behalf of Lloyd's, stated in his deposition that it is a basic concept of claims practice that the coverage of the policy be understood and that, under certain circumstances, the insured be given the benefit of the doubt.  He testified further that an insured in entitled to receive the full benefit of the contract and is eligible for recovery under every phase of the policy that is possible and applicable to the loss. (Livingston depo. at pp. 43-44, 47)  Of course, it is not surprising that Lloyd's would cite and attempt to rely on *Broussard* for the proposition that punitive damages are not appropriate.  However, this case is more akin to another decided by this Court, *Balog v.*

*United States Fidelity and Guaranty Co.*, No. 1:06cv586 (*see especially* docket entries [43] and [45]), involving strikingly similar contract language as is found here.

Before engaging in legal discussion, the Court should point out that Penthouse raises facts and issues surrounding the policy language in its [1] Complaint. *See* ¶¶ 8, 9, 19, and sub-parts of 30 and 33. In the complaint and the motion papers, the parties make the common mistake of referring to "wind" and "hurricane" in a generic manner, when the contract actually reads "direct physical loss of or damage to" and "windstorm." The attempt, of course, is to couch the dispute in the classic terms of wind versus water. The Court is not convinced that this is the case.

First, the exclusionary language:

B. Exclusions

    1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . .

G. Water.

    (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; . . .

What comes next for our purposes is a broadly worded Windstorm or Hail Percentage Deductible endorsement appended to the policy with the following language:

THIS ENDORSEMENT CHANGES THE POLICY . . .
This endorsement modifies insurance provided under the following:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM
    BUILDERS RISK COVERAGE FORM
    CONDOMINIUM ASSOCIATION COVERAGE FORM
    CONDOMINIUM COMMERCIAL UNIT–OWNERS COVERAGE FORM
    STANDARD PROPERTY POLICY
    TOBACCO SALES WAREHOUSES COVERAGE FORM

This endorsement changes the policy effective on [12/01/04, which is both the effective date of the endorsement and the effective date of the policy issued for a one-year term] . . . .

The Windstorm or Hail Deductible, as shown in the Schedule, applies to *loss or damage* to Covered Property *caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage*. If loss or damage from a covered weather condition other than windstorm or

hail occurs, and that loss or damage would not have occurred but for the windstorm or hail, such loss or damage shall be considered to be caused by windstorm or hail and therefore part of the windstorm or hail occurrence .

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to windstorm or hail.

The Windstorm or Hail Deductible applies whenever there is an *occurrence* of Windstorm or Hail.

WINDSTORM OR HAIL DEDUCTIBLE

. . .

A. All Policies

    1. A Deductible is calculated separately for, and applies separately to:

        a. Each building, if two or more buildings sustain loss or damage;

        b. The building and to personal property in that building, if both sustain loss or damage;

        c. Personal property at each building, if personal property at two or more buildings sustains loss or damage;

        d. Personal property in the open.

    2. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of *loss or damage* in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition–Need for Adequate Insurance or Additional Condition–Need for Full Reports.

(Emphasis added).

    The interpretation of an insurance policy presents questions of law, not fact. *Gore v. American Motorists Insurance Co.*, 441 F.2d 10 (5th Cir. 1971); *United States Fidelity and Guaranty Co. v. Omnibank*, 812 So. 2d 196 (Miss. 2002). The terms of an insurance policy are to be interpreted under the rules of construction generally applicable to written contracts, and where the terms of an insurance policy are clear and unambiguous, they are to be enforced as written. *Farmland Mutual Insurance Co. v. Scruggs*, 886 So. 2d 714 (Miss. 2004); *Shaw v. Burchfield*, 481 So. 2d 247 (Miss. 1985). Any ambiguity in the terms of an insurance policy is to be resolved in favor of the insured and against the insurer who drew the contract. *Williams v.*

*Life Insurance Company of Georgia*, 367 So. 2d 922 (Miss. 1979).  An insurance contract is to be considered as a whole, and each of its provisions should be given a reasonable interpretation that is, to the extent possible, consistent with the other terms of the contract.  *Glantz Contracting Co. v. General Electric Co.*, 379 So. 2d 912 (Miss. 1980).

These basic principles were summarized in the early case of *Southern Home Insurance Co. v. Wall*, 127 So.298 (Miss. 1930):

> In construing the provisions of a contract of insurance, all the provisions of the policy must be so construed, if it can be reasonably done, so as to give effect to each.  Where the policy is subject to two interpretations, equally reasonable, that which gives the greater indemnity to the insured will prevail.  If one construction, looking to the other provisions of the policy, and to its general object and scope, would lead to an unreasonable result, such construction must be abandoned, and that construction adopted which will be more consistent with reason.  In all cases the policy must be liberally construed in favor of the insured, in order to accomplish the purpose of the insurance.

When the entire policy is considered here, there is not to be found the limiting deductible language in, for example, typical State Farm ("All other policy provisions apply." ); or Allstate ("All other provisions of the policy apply."); or Nationwide ("This notice does not provide coverage nor does this notice replace any provision of your policy. . . . If there is any conflict between the policy (including your endorsements) and this notice, the provisions of the policy or endorsements shall prevail.") policies.  The provisions of the Lloyd's policy and its endorsement are in conflict, and must be resolved in Penthouse's favor.

This Court has ruled that "Hurricane Katrina was a windstorm by any definition.  Indeed, the definition of a hurricane is based on the strength of the winds it generates." *Broussard v. State Farm Fire & Casualty Co.*, No. 1:06cv6 (Order docketed at [133]).  In essence, Lloyd's' policy "changes" and "modifies [the] insurance provided" to the point of extending coverage for loss or damage to covered property "caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage."  There is no reference to other provisions of the policy; there is no limiting language to covered losses; and windstorm or hail are each called an occurrence.  In effect, the insuring language of the Lloyd's endorsement operates as a reverse anti-concurrent cause clause.

Penthouse's damages must be calculated in accordance with its recovery of other insurance benefits (what jumps to mind is the co-insurance provision) and the total value of the destroyed property, as well as taking into account the application of the deductible.  For the time being, it is unknown whether the claim decision was the result of simple negligence or rises to the level of a tortious breach of contract.  Under Fed. R. Civ. P. 56, the Court can not say that there is no genuine issue as to any material fact and that Lloyd's is entitled to even a partial judgment as a matter of law.

Accordingly,  **IT IS ORDERED**:

Lloyd's' [111] Motion for Summary Judgment is **DENIED**;

**SO ORDERED** this the 2nd day of July, 2007.

                                                          S/L. T. SENTER, JR.
                                                          SENIOR JUDGE