UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


PENTHOUSE OWNERS ASSOCIATION, INC.                                        PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:07cv568-LTS-RHW

CERTAIN UNDERWRITERS AT LLOYD'S LONDON                              DEFENDANT


**ORDER**

At the aborted pretrial conference held in this cause on July 9, 2008, the Court indicated that it would not grant Defendant's [185] Motion to Continue Trial or its [186] Motion to Reopen Discovery.  This order formalizes those decisions, as well as addresses the [183] Motion for Reconsideration of this Court's [166] Order denying Defendant's [111] Motion for Summary Judgment.  After reviewing the Court's order, Defendant's arguments, and the language of the insurance policy issued to Plaintiff, the Court is not persuaded that reconsideration is appropriate.

Defendant offers several reasons why it believes the Court's [166] Order is in error.  First, despite the fact that Defendant claimed in its [111] summary judgment motion that Plaintiff was not entitled to recover any policy benefits because so-called wind damage did not exceed the amount of the applicable deductible, it now complains that the Court did not warn the Defendant that it was going to receive an adverse ruling by virtue of the Court's interpretation of that selfsame endorsement.  In Defendant's words, "Plaintiff did not meet its burden to come forward with evidence demonstrating a genuine issue of material fact that Plaintiff was entitled to recover *under its insurance policy*."  (Motion for Reconsideration at p. 2; emphasis supplied) The only "evidence" that was necessary for this purpose was the policy itself, the interpretation of which (as the Court held and Defendant does not address, much less dispute) is a question of law, not fact.  It defies reason that the Court would not take the entire insurance contract into consideration, or that Defendant wants to limit the inquiry to its own unilateral advantage.

The Court is not certain whether Defendant's use of language in its brief (twice, as a matter of fact) similar to that used by the Court in its order is coincidental or ironic ("It is axiomatic . . ."); the Court used it in the context of focusing on the entire language of a particular insurance policy, while Defendant attempts to make some point about "principles of finality and judicial economy . . . ." (Motion for Reconsideration at p. 4) Regardless, Defendant, which moved for summary relief, now casts itself as the non-movant simply because the Court ruled against its request.  After further consideration, the Court is more convinced that it is on solid legal ground with respect to the interpretation of the entire contract.

Defendant does not directly quarrel with the Court's conclusion that the [1] Complaint expressly placed the endorsement at issue; it merely points to other portions of the Complaint

where it does not.  However, it is beyond dispute that Plaintiff's claims for damages is based solely on the policy of insurance issued to it by the Defendant, and the issue of its scope of coverage not only appears somewhere in the record, but permeates it.

What is especially troubling is that one of the primary grounds for Defendant's motion for summary judgment is that the applicable deductible is not met by what it claims is a covered loss/event by the policy; yet Defendant ignores the very language defining the occurrence to which the deductible applies.  Therefore, Defendant's reference to "purported coverage" (Motion for Reconsideration at p. 8) for "wind" is misplaced in the face of the actual coverage provided for windstorm.  *See* discussion *infra*.

Defendant also states that its Windstorm or Hail (it is not "and") endorsement "does nothing more than alter the policy's deductible *when there is loss caused by a particular covered cause–windstorm and* [actually "or"] *hail*." (Motion for Reconsideration at p. 11; emphasis supplied) It then goes so far as to say that "[t]here is nothing in the Endorsement that would lead a reasonable policyholder to believe that the Endorsement *changes* the coverage afforded by or alters any other aspect of the policy . . . ." (Motion for Reconsideration at p. 12)  That position is directly in conflict with the endorsement's broad introduction, which reads as follows:  "THIS ENDORSEMENT *CHANGES THE POLICY* . . . This endorsement *modifies insurance provided under the following:* [including the Building and Personal Property Coverage Form and the Standard Property Policy]."  (Emphasis supplied)

> The body of the endorsement contains the following language:
>
> The Windstorm or Hail Deductible, as shown in the Schedule, applies *to loss or damage* to Covered Property *caused directly or indirectly by windstorm or hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage*.  If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss would not have occurred but for Windstorm or Hail, such loss shall be considered to be caused by Windstorm or Hail and therefore part of a Windstorm or Hail *occurrence*.
>
> With respect to Covered Property at a location identified in the Schedule, no other deductible applies to windstorm or hail.
>
> The Windstorm or Hail deductible applies whenever there is an *occurrence* of Windstorm or Hail.

(Emphasis supplied).

Even accepting that the deductible language in the main body of the policy would not apply to an excluded event (i.e., flood), there is no reason to emphasize that the endorsement "changes the policy" and "modifies [the] insurance provided," and add the words "caused directly or indirectly by windstorm or hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage" in the endorsement unless it was intended to cover all events

(an occurrence) of a generic windstorm, including any flooding the windstorm causes.

   Defendant's citation of *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007), and *In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007), as authority in support of its position does not afford it any relief.  The latter primarily considered whether a flood exclusion was limited to an event resulting from natural causes only or occurring because of both natural causes and negligent or intentional acts.  *Id*. at 198.  However, each of these cases addressed the scope of the particular Hurricane Deductible Endorsements contained in policies before the Court (Defendant was not a party in either case, and Defendant's policy language was not considered by either case).  The Fifth Circuit looked at "all of the relevant policy provisions."  *Tuepker*, 507 F.3d at 355.  In those endorsements, it was determined that a hurricane was defined in terms of specific events (e.g., wind, wind gusts, hail, rain, tornado, cyclone, or hurricane), with the excluded cause of water or flood notably absent from that list.  The Court also emphasized that the endorsements expressly stated that all other provisions of the policies applied, "indicating that the flood exclusions remain in effect."  *In re Katrina Canal Breaches Litigation*, 495 F.3d at 220.  *See also Tuepker*, 507 F.3d at 355 (endorsement's concluding statement that "'[a]ll other policy provisions apply' unambiguously reflects that the endorsement does not enlarge or change the scope of coverage under the policy").

   It bears repeating that in the instant case the introductory language to the endorsement indicates that it "changes the policy" and "modifies [the] insurance provided."  "Policy" and "insurance" are likewise broad in scope and are equally susceptible of being interpreted as the means and scope of the coverage.  The main body of the Defendant's policy refers to "direct physical loss of or damage to," not "wind"; the term "windstorm" in the endorsement is broad and undefined; and there is nothing to indicate that all other potentially contrary provisions of the policy unambiguously apply to the deductible endorsement.  It is not enough to say that the endorsement applies to the amount of the deductible; the result is not only a higher deductible, but one that is at work in the event of a windstorm (there is a significant difference between $5,000 and $175,000).

   Defendant also mentions this Court's decision in *Sima/Signature Lake, L.P., et al. v. Certain Underwriters at Lloyd's London*, No. 1:06cv186 (docket entry [34]).  That opinion was limited to the interpretation of two provisions of the policy relating to "Other Insurance" as a result of a direct request for a declaratory judgment to determine the effect of those provisions.  *See* Order at docket entry [35].  A Windstorm or Hail Deductible Endorsement was never mentioned, as it had nothing to do with the narrow issue before the Court.  The only relevant similarity between *Sima/Signature Lake* and the instant case is that the Defendant has the same name.  Interestingly, there is no mention of this Court's decision in *Balog v. United States Fidelity and Guaranty Co.*, No. 1:06cv586, involving the precise issue and virtually the same contract language presented here (order denying summary judgment request by defendant).

   Finally, Defendant's [185] Motion to Continue Trial and [186] Motion to Reopen Discovery are based on its desire to explore the intent of the parties.  The intent of the parties is expressed in the insurance policy.  This was not an issue for the Defendant [111] when it moved for summary judgment under the terms of the insurance policy, and it should not be one now.

This Court followed the rules of law governing contract construction, as reflected in its [166] Order, which apparently is not challenged in the instant motion (nor is the Court's conclusion that Katrina was a windstorm). As further discovery is not necessary, neither is a continuance of the trial.

      Accordingly, **IT IS ORDERED**:

      Defendant's [183] request to reconsider the Court's [166] Order denying the [111] Motion for Summary Judgment is **DENIED**;

      Defendant's [185] Motion to Continue Trial is **DENIED**;

      Defendant's [186] Motion to Reopen Discovery is **DENIED**;

      **SO ORDERED** this the 21st day of July, 2008.

                                                        s/ L. T. Senter, Jr.
                                                        L. T. SENTER, JR.
                                                       SENIOR JUDGE