UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PENTHOUSE OWNERS ASSOCIATION, INC.                                    PLAINTIFF

V.                                               CIVIL ACTION NO. 1:07cv568-LTS-RHW

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON                         DEFENDANTS

**<u>ORDER</u>**

With each motion that Plaintiff files dealing with its alleged entitlement to replacement cost for the total loss of its property (and by the Court's count, including the instant [260] Motion for Partial Summary Judgment, that number is now five, *see also* docket entries [197], [208], [253], and [257]), the Court is brought full circle to the discussion held last July at the pretrial conference and addressed in its [210] order entered on August 1. At that time, the Court set a course for moving this cause of action to a trial. Defendant was allowed to conduct discovery directed to the windstorm/hail deductible endorsement issue on which the Court based its ruling denying summary judgment, and Plaintiff was required to retain an expert for the purpose of establishing the value of the damaged property and the amount of its damages. Thus, it is questionable whether Plaintiff may pursue a motion for summary judgment at this stage and under the current circumstances.

Plaintiff is determined to revisit the issue of replacement cost, and its efforts to establish its right to replacement cost under the insurance contract has exposed inconsistent positions on certain related points. As the Court observed in its [210] August order, the Court's interpretation of the subject insurance policy, and, specifically, the effect of the windstorm or hail deductible, mattered very little to Plaintiff. Now, Plaintiff wants to use that ruling (in docket entry [166], and confirmed in docket entries [201], [205], and, for that matter, [210], *see* discussion *infra*,) as a springboard to recovering replacement cost. As the Plaintiff's argument is now framed, Defendant should never have relied on the deductible endorsement in the first place. Indeed, Plaintiff goes so far as to assert that "[t]his Court relieved Defendant of those orders in its [210] Order reopening discovery." (Plaintiff's [261] Memorandum at p. 8) A plain reading of the Court's order shows otherwise:

> There is no need to revisit the Court's substantive rulings on the interpretation of the windstorm deductible endorsement. In fact, the Court is still convinced that it is on solid substantive legal ground with respect to the interpretation of the entire contract, and that the other factors for relief listed in [Fed. R. Civ. P.] 60 do not apply.

Likewise, the Court has always recognized Defendant's right to reserve for appeal the underlying policy interpretation. Neither does the Court believe that the Defendant's interpretation of the policy gives rise on its own to a claim for punitive damages.

Attached to Plaintiff's [260] Motion for Summary Judgment are the subject insurance policy (there are several copies of this document in the record, and the Court has its own hard copy, making it unnecessary for any more to be submitted), as well as the affidavits of Ray Deloteus and Al Lewando, who are members of Plaintiff's board of directors. Deloteus's affidavit is similar to the one given as part of Plaintiff's [197] Motion for Reconsideration, *see* discussion *infra*. Finally, the affidavit of Douglas J. McColl, Jr., an independent insurance adjuster licensed in Alabama, Florida, Texas, and Mississippi, concerns the procedure for establishing Plaintiff's damages under the insurance policy (this affidavit will also be discussed in more detail *infra*).

Plaintiff's Motion for Partial Summary Judgment could be confused with a request for declaratory relief. Plaintiff wants the Court to establish that its claim for actual cash value does not preclude a claim for replacement cost value under the policy, and that it has fulfilled its policy obligations to recover replacement cost coverage by giving a timely notification and by replacing the property as soon as reasonably possible after the loss, as required by the insurance contract. On the issue of actual replacement, Plaintiff, in the aforementioned [197] Motion for Reconsideration, argued that Deloteus's affidavit "provides strong [as opposed to irrefutable] evidence that [Plaintiff] has acted to replace the lost property as soon as reasonably possible . . . . *At the very least, this would be a question for the jury*." *See* [198] Memorandum at pp. 8-9 (emphasis supplied). With basically the same affidavit, which provides more generalities than details, Plaintiff now claims it is entitled to summary judgment.

As to the former request, Plaintiff, in that same [198] memorandum at p. 9, attempted to convince the Court that actual cash value is the equivalent of replacement cost. However, McColl's affidavit, submitted by Plaintiff, reads in pertinent part:

> In determining the cost to repair or replace the covered property, the adjuster must be familiar with the terminology of the contract and he must apply the language to the estimate of covered damages. ¶ I have been asked to explain my understanding of the two terms commonly used in the insurance industry. The terms are replacement cost value (RCV) and actual cash value (ACV). ¶ Universally, the definition of RCV is the dollar amount needed to replace damaged personal property or damaged dwelling property without deduction for depreciation *but limited by the maximum dollar amount shown on the declarations page of the policy*. ¶ Also, universally in the insurance industry, ACV is defined as the amount of money that pays for damages to covered personal property and covered dwelling property *minus depreciation*.

(Emphasis supplied)

Factual questions remain on the amount of benefits Plaintiff is entitled to recover under the insurance contract and whether it has satisfied the conditions entitling it to replacement cost coverage (there is no dispute that the actual repair or replacement of the property has not been achieved). These are issues on which the Plaintiff has the burden of proof. The questions whether Plaintiff gave timely notice and whether Plaintiff replaced the insured property as soon

as reasonably possible are still in dispute, making summary judgment inappropriate.

Accordingly, **IT IS ORDERED**:

Plaintiff's [260] Motion for Partial Summary Judgment is **DENIED**.

**SO ORDERED** this the 13th day of January, 2009.


                                                s/ L. T. Senter, Jr.
                                                L. T. SENTER, JR.
                                                SENIOR JUDGE