UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PENTHOUSE OWNERS ASSOCIATION, INC.                                        PLAINTIFF

V.                                                       CIVIL ACTION NO. 1:07cv568-LTS-RHW

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON                              DEFENDANTS

## ORDER

Plaintiff has filed a [257] Motion to Exclude Testimony of Jonathan C. Held and Brett O'Steen as to their "reports" concerning the calculation of Plaintiff's damages under the subject insurance policy. Osteen's compilation can hardly be called a report, for it is labeled a draft for discussion purposes only and consists of 779 pages of calculations identifying the replacement cost value (RCV) ($3,868,299.10), the applicable depreciation ($493,699.86), and the resulting actual cash value (ACV) ($3,374,599.24). Held, on the other hand, concludes in 17 pages and in a much more familiar form expected from an expert that the total building RCV is $5,540,402, but when limited to the common elements of the building structure (excluding certain finishes), the RCV is $3,301,105, with the ACV coming in at $2,753,516. The respective ACV figures, to Plaintiff's apparent consternation, are less than the $3.6 million Plaintiff has already received in flood insurance benefits.

Plaintiff's ground of attack is based on the misconception that the Court has precluded it from proving actual cash value by using replacement cost less depreciation. But an affidavit submitted by Plaintiff in support of its [260] Motion for Partial Summary Judgment recites that "universally in the insurance industry, ACV is defined as the amount of money that pays for damages to covered personal property and covered dwelling property minus depreciation." This method of calculation is confirmed by the optional coverages portion of the insurance policy. Replacement cost is one of those coverages to which depreciation does not apply; however, Plaintiff is not entitled to replacement cost benefits until certain conditions are met. As stated in the policy,

> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.
>
> We will not pay on a replacement cost basis for any loss or damage . . . [u]ntil the lost or damaged property is actually repaired or replaced; and . . . [u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

It is undisputed that the actual repair or replacement of Plaintiff's property has not yet been done. The Court agrees with Defendant's assessments that "[n]one of the Court's prior orders address the methodology for calculating [ACV] other than to require expert testimony on the issue," (Defendant's [264] Response to Plaintiff's [257] motion at p. 4,) and that being eligible for replacement cost coverage and using replacement cost to calculate the actual cash value of a loss are two entirely different matters. *Id.* at pp.6-7.

Of course, any recovery under the subject insurance policy is limited to the total coverage available, which in this case is $3,568,000 (plus an inflation enhancement). Under the general provisions of the policy, "[t]he most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the declarations." Under the specific language of the optional replacement cost coverage, "[w]e will not pay more for loss or damage on a replacement cost basis than the least of . . . [t]he Limit of Insurance applicable to the lost or damaged property . . . ." In other words, the cap on any recovery under the subject policy is the amount of coverage shown on the declarations page (plus inflation coverage). At the appropriate time, the deductible and Plaintiff's receipt of flood insurance benefits will be taken into consideration.

For the purposes of Plaintiff's [257] motion, nothing substantive has been presented to warrant exclusion of Held's or O'Steen's testimony. The motion is not well taken.

Accordingly, **IT IS ORDERED**:

Plaintiff's [257] Motion to Exclude Testimony of Jonathan C. Held and Brett O'Steen is **DENIED**.

**SO ORDERED** this the 13th day of January, 2009.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE