**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**PENTHOUSE OWNERS ASSOCIATION, INC.**                          **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO.1:07CV568 LTS-RHW**

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**                **DEFENDANT**

**<u>MEMORANDUM OPINION</u>
<u>DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

      The Court has before it Defendant Certain Underwriters at Lloyd's, London (Lloyd's) motion [268] for partial summary judgment. Lloyd's asserts two grounds for the requested relief: 1) Lloyd's alleges that the plaintiff's representatives "participated in a scheme whereby Penthouse intentionally misrepresented by half the true replacement cost value of its condominiums in its application for insurance," rendering the Lloyd's policy at issue in this case void; and 2) Lloyd's contends that because its policy contains a provision excluding flood damage, the Court should reverse its earlier determination that the windstorm deductible endorsement created an ambiguity that must, under Mississippi law, be resolved by granting coverage.

**The Issue of Plaintiffs' Having Misrepresented the Value of the Insured Property**

      While the parties agree that the insured property was a total loss, and while there is no dispute as to the limits of coverage under the Lloyd's policy, the parties disagree by a very wide margin on the question of the actual cash value (ACV) of the insured property at the time of the loss. I cannot determine from the record before me when the three insured buildings were built nor at what original cost. It should be not only possible, but also practical, to document the original cost of construction and, by now, the replacement cost for the insured buildings. There is likely some reasonable range within which the real rate of annual depreciation since the original construction might be calculated. But the parties have not been able to reach a stipulation on the issues of replacement cost, depreciation, or ACV.

      Lloyd's first contention is that Penthouse misrepresented the value of the insured property (three buildings) in applying for coverage. Lloyd's asserts that Penthouse represented the total value of these three buildings to be, in round numbers, $3.5 million in order to obtain Lloyd's coverage for that amount. In this action, Penthouse asserts that the actual cash value (ACV) of the insured buildings at the time of the loss was far more than $3.5 million, with estimates in the record ranging from $7 million to $12 million.

The three buildings at the Penthouse property were insured under two coverages provided by different companies: (in round figures) Audubon Insurance Company provided flood coverage of $3.5 million dollars and Lloyd's provided windstorm coverage of approximately $3.5 million. Penthouse has collected its flood insurance coverage. Assuming, for illustrative purposes only, that the pre-storm ACV of the property was $7 million, the property would have been fully insured under these two policies if it were destroyed 50% by flood and 50% by other covered windstorm forces.

The documents Lloyd's has submitted in support of its motion are insufficient to prove Lloyd's first contention. These documents do not establish, as a matter of law, that Penthouse's representatives made any representation concerning the value of the insured property, nor do these documents indicate that Penthouse was ever asked to furnish a written statement of value for the insured property. The Court has considered a case in which Lloyd's did require the applicant to make a specific written statement of the value of the insured property. See *Sima/Signature Lake, L.P. v. Certain Underwriters at Lloyd's London*, 1:06cv186 LTS-RHW [26-4] . There is no such specific statement of value in the record before me. The insurance applications Lloyd's has submitted in support of its motion reflect Penthouse's request for $3.5 million in property damage coverage, but these documents do not state, on their face, that this is the total value of the property being insured.

The merits of Lloyd's contention that its policy is void because the property was insured under the Lloyd's policy for only 50% of its true value, must be decided by reference to the terms of the Lloyd's policy at issue. My review of this policy indicates that there are two relevant policy provisions: one entitled "coinsurance" and the other entitled "other insurance."

The coinsurance provision is found at pages 11 - 12 of the policy's BUILDING AND PERSONAL PROPERTY COVERAGE FORM:

> F.     Additional Conditions
> *The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.*
>
> > 1.     Coinsurance
> > *If a Coinsurance percentage is shown in the Declarations, the following condition applies.* [An 80% coinsurance provision is shown in the policy Declarations]
> >
> > > A.     *We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declaration is greater than the Limit of Insurance for the property.*

> *Instead, we will determine the most we will pay using the following steps:*
>
> *(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;*
> *(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);*
> *(3) Multiply the total amount of loss, before the application of any deductible by the figure determined in Step (2); and*
> *(4) Subtract the deductible from the figure determined in Step (3).*
>
> *We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.*

It is Lloyd's position that the four-step calculation made under this coinsurance provision should take only the Lloyd's coverage into account. But this policy provision does not explicitly limit the calculation to only the Lloyd's coverage, and the provision implicitly allows for inclusion of other insurance coverage in this calculation.

The purpose of this provision is to prevent underinsurance, a situation in which an item of property is insured for less than its true value. It is readily apparent that this policy provision contemplates the insured's having property insurance other than the Lloyd's policy itself, hence the reference to the insured's having "to rely on other insurance . . . ." Because this provision plainly contemplates the insured's purchase of other insurance, it is my opinion that the coinsurance formula must be applied using all of the casualty insurance on the covered property, not just the Lloyd's coverage. Provision F(1)(a) refers to "the Limit of Insurance on the property," not specifically to the limit of insurance under the Lloyd's policy. The property was insured for $7 million, $3.5 million under the flood policy and $3.5 million under the Lloyd's policy.

Assuming again, for illustrative purposes only, that the pre-storm ACV of the insured property were $7 million, the coinsurance provision would require that the property be insured for at least 80% of this $7 million value. Eighty percent (80%) of this $7 million value is $5.6 million (Step One). The limit of the insurance for the building was $7 million ($3.5 million from Audubon and $3.5 million from Lloyd's). The $7 million limit of insurance divided by the $5.6 million calculated in Step One is 1.25 (Step Two), meaning that the property was insured for 125% of the value required under the Lloyd's coinsurance provision. The total amount of the loss under this hypothetical is $7 million. Multiplying this figure by 1.25 yields a figure of $8.75 million

(Step Three). This is more than the Lloyd's policy limit, and Lloyd's maximum contractual liability under its policy is therefore its policy limit ($3.5 million).

The coinsurance provision would not affect Lloyd's potential liability under this policy unless and until it were established that the ACV of the insured property at the time of the loss was more than $8.75 million. Assuming a total loss of the insured property and an ACV of $8.75 million, the coinsurance provision requires that the building be insured for $7 million ($8.75 million x 80% = $7 million), and this is the amount of coverage (in round figures) in force for the insured property at the time of the loss.

Lloyd's has submitted no document that reflects a verification of the value of the insured property by any Penthouse representative. The documents Lloyd's has submitted in support of its motion for partial summary judgment indicate that the plaintiff applied for and Lloyd's sold $3.5 in property damage coverage. I see nothing in these documents that indicates that the amount of insurance Penthouse is applying for is a representation as to the total value of the property, and I see nothing in the Lloyd's policy that prohibits the insured from allocating the risk of loss between more than one policy of insurance. This allocation of its risk by the policy holder is in fact contemplated by the policy's explicitly stating, in the coinsurance provision, that the insured "will either have to rely on other insurance or absorb the loss."

Exhibit I to Lloyd's motion is a "Proposal of Insurance" prepared by McGriff, Seibels & Williams, Inc. the broker acting on behalf of Penthouse. In the section of this exhibit entitled "Glossary of Terms..." the following language appears:

*Coinsurance*

*Your policy contains a coinsurance clause requiring the limit of coverage be a minimum percentage (usually 80%) of the insurable value of your property. If the amount of insurance carried is less than required by this clause, any claim payment may be reduced by the same percentage as the deficiency. For example, covered property worth $100,000 may require a minimum of 80%, or $80,000 of coverage for compliance with the policy's coinsurance requirement. If only $60,000 of coverage is carried (25% less than the required $80,000), then any loss payment would be reduced by 25%.*

This explanation of the coinsurance provision appears to be based upon the total insurance applicable to the insured property, not just the coverage under the Lloyd's policy.

The "other insurance" provision of the Lloyd's policy appears on the first page of the section of the policy entitled COMMERCIAL PROPERTY CONDITIONS:

G.   OTHER INSURANCE

> 1. *You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.*
> 2. *If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.*

Once again, we find a policy provision that is specifically applicable to the situation in which the insured procures additional coverage from an insurer other than Lloyd's. Here, however, the policy specifically refers (in the first paragraph of this provision) to the "Limit of Insurance *under this Coverage Part*," a different qualifying term from the term found in the coinsurance provision. This difference makes it readily apparent that had Lloyd's intended to limit its coinsurance provision to consideration only of coverage under its own policy, it was capable of so stating.

There is no evidence that Penthouse concealed its purchase of separate flood insurance, and I see no indication that any Lloyd's representative inquired concerning the other coverage Penthouse purchased. Lloyd's did not undertake to get an appraisal of the insured property before writing the Penthouse coverage, although it appears to me that it had an opportunity to do so if it wished. Lloyd's motion will therefore be denied on its first asserted grounds for relief.

I must take notice that the facts underlying Lloyd's first grounds for relief, the contention that the insurance application was a statement of value by the insured, were explicitly dealt with in the first paragraph of the third page of the Order [210] I entered on August 1, 2008. Lloyd's has disregarded this ruling in submitting this motion. This first grounds for relief is in fact a request for a change in the August 1, 2008, ruling in the form of a new motion.

### The Issue of the Interpretation of the Wind Storm Deductible Endorsement

This ground for Lloyd's motion for partial summary judgment also asks for a change in one of my rulings, and Lloyd's has so stated in its moving papers.

Lloyd's has submitted no new evidence (in support of its second ground for relief) that would support a finding that there has been a mutual mistake in the formation of the policy. Perhaps this evidence will be forthcoming at a later stage of this proceeding. In the absence of this evidence, I will decline Lloyd's invitation to change my prior ruling on the issue of coverage at this time. Lloyd's has made its

record on this point of law, and my earlier ruling, if mutual mistake is not established, will be subject to appellate review in due course.

The defendant's motion [268] for partial summary judgment will be denied. An appropriate order will be entered.

**SO ORDERED** this 16th day of January, 2009.

                                                 s/ L. T. Senter, Jr.
                                                 L. T. SENTER, JR.
                                                 SENIOR JUDGE