# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 15, 2010

Lyle W. Cayce
Clerk

No. 09-60652

PENTHOUSE OWNERS ASSOCIATION, INC.,



                Plaintiff - Appellee

v.

CERTAIN UNDERWRITERS AT LLOYDS, LONDON,

                Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, SMITH, and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

      This appeal arises from a claim for insurance coverage for damage caused by Hurricane Katrina. The district court interpreted a windstorm deductible endorsement in the appellee's insurance policy to require coverage for the destruction of the insured's buildings by Katrina's storm surge. Based on principles of insurance contract interpretation, under Mississippi law, we conclude that the deductible endorsement at issue here did not render the policy ambiguous or otherwise expand coverage to include losses excluded elsewhere in the policy. Accordingly, we vacate the district court's certified orders and remand for consideration of the Underwriters' summary judgment motion.

I

Appellee Penthouse Owner's Association, Inc. ("Penthouse") owns a complex of condominiums in Pass Christian, Mississippi, that are insured under a Lloyd's, London ("the Underwriters") all-risk policy ("Policy") with a policy limit of $3,568,000. The Policy excludes water damage, including "flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not." It also contains an "anti-concurrent causation" clause (ACC clause), which states that "such [water] loss or damage is excluded *regardless of any other cause of loss or event that contributes concurrently or in any sequence to the loss.*" (emphasis added). In addition, the policy includes an endorsement that defines a "Windstorm or Hail Deductible" ("Windstorm Deductible"). The Deductible is set at 5%, and the endorsement states, in relevant part:

> The Windstorm or Hail Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by windstorm or hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than windstorm or hail occurs, and that loss or damage would not have occurred but for the windstorm or hail, such loss or damage shall be considered to be caused by windstorm or hail and therefore part of the windstorm or hail occurrence.
>
> . . .
>
> The Windstorm or Hail Deductible applies whenever there is an occurrence of windstorm or hail.

Hurricane Katrina completely destroyed Penthouse's property, leaving only the slab. Penthouse recovered the policy limit ($3,610,000) from its flood insurer, and made a claim under the Underwriters' policy. The Underwriters denied the claim, citing the Policy's flood exclusion and ACC clause and the

Underwriters' engineers' determination that the buildings had been destroyed by flood.

Penthouse filed this action on April 24, 2007, to recover under the Policy, alleging breach of contract and negligent and bad faith breach of contract. The complaint alleged that the winds of Hurricane Katrina destroyed the condos several hours before the storm surge, and that therefore the loss was caused entirely by wind, not by flood. The Underwriters moved for summary judgment, arguing that Penthouse could not show that wind alone caused damages exceeding the Policy's windstorm deductible and Penthouse's previous recovery for flood damage. The district court denied the motion for summary judgment, and later denied the Underwriters' motion for reconsideration and motion for partial summary judgment; all three orders were based on the court's conclusion that the Windstorm Deductible operated to provide coverage for hurricane damage regardless of whether the damage was caused by wind or flood. On January 29, 2009, the district court issued a sua sponte "Order of Clarification on the Issues of Liability and the Measure of Contract Damages," in which the court granted judgment as a matter of law to Penthouse on the question of the Underwriters' liability for all hurricane-related losses, again based on the court's interpretation of the Windstorm Deductible.

After the case was reassigned to a different judge, the district court certified for appeal, under 28 U.S.C. § 1292(b), the July 2, 2008, order denying the Underwriters' motion for summary judgment, as well as the three related orders: the July 21 order denying the Underwriters' motion for reconsideration; the January 16, 2009, order denying the Underwriters' motion for partial summary judgment; and the January 29 order granting judgment as a matter of law to Penthouse on the issue of liability. We granted leave to appeal.

II

A.

This court has jurisdiction to review any issue fairly included in orders certified pursuant to § 1292(b). *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 204 (1996). The legal question central to each of the certified orders here is whether, as a matter of contract interpretation, the Windstorm Deductible negates the Policy's exclusion of coverage for water loss. We review this question of law *de novo*. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).

In Mississippi, when the terms of an insurance policy are unambiguous, they must be enforced as written. *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002). However, if the policy is subject to two reasonable interpretations, the interpretation giving greater indemnity to the insured will prevail. *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). Exclusions and limitations are reviewed stringently; they must be clear and unambiguous. *Id.; see also Corban v. United Svcs. Automobile Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) ("Language in exclusionary clauses must be 'clear and unmistakable.'") (citations omitted). An insurer "bears the burden of showing that an exclusion applies and that it is not subject to some other reasonable interpretation that would afford coverage." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 402 (5th Cir. 2008).

B.

Here, the parties do not dispute that the Policy's exclusion for water losses is unambiguous, nor do they dispute that destruction of a building by a hurricane storm surge would fall into the exclusion. *See Corban*, 20 So. 3d at 611. In fact, the original dispute in the district court was whether the Underwriters properly concluded that the insured buildings were destroyed by

No. 09-60652

water rather than wind. Penthouse alleged in its complaint that only wind destroyed the buildings, which occurred before the storm surge arrived, implicitly acknowledging that the policy excluded water damage. There was no allegation that the Windstorm Deductible somehow expanded the policy's coverage to include damage caused by water. The dispute now before us arose when the district court nevertheless concluded that the policy's Windstorm Deductible endorsement effectively canceled the policy's exclusion for water losses.

An endorsement to an insurance policy "'controls the policy insofar as it enlarges, modifies, or restricts the terms' of the policy," and "if there is any conflict between the rider and the policy, 'the rider controls in construing the contract expressly where the provisions of the rider are more specific.'" *Delta & Pine Land Co.*, 530 F.3d at 400 (quoting *Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co.*, 24 So. 2d 848, 850–851 (Miss. 1946)). A court should "look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Corban*, 20 So. 3d at 609.

The district court held that conflict in the Policy here is created by the language in the Windstorm Deductible that explains when the deductible applies. The deductible "applies to loss or damage . . . caused directly or indirectly by windstorm or hail, *regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.*" (emphasis added). The emphasized phrase exactly tracks the language of the ACC clause in the "Exclusions" portion of the policy, which extends the water exclusion to damage caused directly or indirectly by water, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."[1] The district

---

[1] As interpreted by the Mississippi Supreme Court, the ACC clause in practice only excludes loss that was "concurrently" caused by water, not loss that was caused "in any

court concluded that, "[i]n effect, the . . . [deductible] endorsement operates as a reverse anti-concurrent cause clause." Order of July 2, 2007. That is, the district court held, the deductible does not serve to limit coverage, but expands coverage to include any damage caused "concurrently or in any sequence to" windstorm or hail damage, even if the damage otherwise would not have been covered under policy provisions that exclude flood damage.

We can acknowledge that some of the language of this Deductible—"regardless of any other cause or event"—may be misleading, but only if read in virtual isolation. When the Deductible is read in its proper context of the policy as a whole, and with the common understanding of how deductibles operate in insurance policies, any ambiguity about the effect of this language on the scope of coverage vanishes. The purpose of a deductible is to shift some of the insurer's risk (that is, covered risk) to the insured, which is accomplished by setting a limit on the value of covered losses below which the insurer is not obligated to pay. *See* 12 Couch on Ins. 3d § 178:1 ("A provision commonly found in automobile collision policies is the so-called 'deductible clause,' whereby a stated sum is deductible from the *amount for which the insurer would otherwise be liable*." (emphasis added)); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 589 (1993) (defining a "deductible" as "a clause in an insurance policy relieving the insurer of responsibility for an initial specified small loss *of the kind insured against*." (emphasis added)). As a mechanism for shifting risk from the insurer to the insured, a deductible clause can only logically be applied after a covered loss has been established, and it is unnatural to interpret a deductible clause as a mechanism that increases the

---

sequence" by water. *Corban*, 20 So. 3d at 615–16 . In other words, when water and another cause operate indivisibly to create damage, the loss is excluded; but when water and another cause act in sequence, the damage caused by water is excluded and the damage from the other cause is covered. *See id.*

risk of the insurer by expanding the scope of coverage. That said, we do not preclude the rare possibility that explicit words of coverage in a deductible, interpreted in the context of the policy as a whole, may establish coverage or an ambiguity thereof; but that exception is not this case. Here, the plain language of the Windstorm Deductible only describes when the deductible applies, and does not purport to describe, or even mention, the scope of the policy's coverage.[2] The purpose of the broad language, which the district court read as a "reverse anti-concurrent cause" clause, is actually to ensure that an insured cannot escape the applicability of the higher deductible for windstorm and hail damage simply because other weather events (with lower deductibles) contributed to the loss. That is, the clause operates only when deciding whether to apply the deductible to a loss, *after* determining that coverage for the loss exists pursuant to the coverage-defining portions of the policy. The deductible endorsement does not create or extend coverage.

## C.

Precedent supports the same result we reach under our plain reading of the insurance policy.[3] Although the Mississippi Supreme Court has not interpreted a deductible endorsement clause like the one at issue here,[4] this

---

[2] Contrary to the district court's conclusion, the phrase "This endorsement changes the policy," found as a header to the Windstorm Deductible endorsement, does not refer to the *scope of coverage* under the policy. To be sure, this endorsement does indeed "change the policy": it changes the standard deductible (which is $5000 for other types of losses) to 5 % of the total loss when the loss is caused by windstorm or hail.

[3] Penthouse has moved to certify the question of interpretation of the Policy to the Mississippi Supreme Court. However, Penthouse chose to file suit in federal, not state, court, and certification would cause significant delay in the resolution of this case. *See Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 357 n.12 (5th Cir. 2007). Because we are able to determine the proper interpretation of the Policy under Mississippi law, we deny the motion.

[4] Each party contends that the Mississippi Supreme Court has answered the question here to its advantage, but we think neither is correct. The Underwriters argue that the Mississippi court addressed the issue in *Corban* when it held that a "wind and hail" deductible did not provide coverage for all hurricane-related losses, including water damage. *Corban*, 20

court has done so, applying Mississippi law to hold that a hurricane deductible endorsement did not affect the policy's scope of coverage. *See Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 355 (5th Cir. 2007). "Once a panel of this court has settled on the state law to be applied in a diversity case, the precedent should be followed by other panels without regard to any alleged confusion in state law, absent a subsequent state court decision or statutory amendment which makes this court's decision clearly wrong." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 425 (5th Cir. 2001) (quoting *Lee v. Frozen Food Express, Inc.*, 592 F.2d 271, 272 (5th Cir. 1979)).

We first addressed a deductible like the one here—but under Louisiana law—in *In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007). In that case, we concluded that several deductible endorsements similar to the one in this case did not render the policies' ACC clauses ambiguous. Those deductibles included the same broad language stating that they applied "regardless of any other cause or event contributing concurrently or in any sequence to the loss." We noted that "[n]othing in the language of the

---

So. 3d at 614 n.21. However, *Corban* does not provide a definitive answer because the issue in that case was narrower than the one here. The argument the court addressed in *Corban* was that the mere existence of a "wind and hail" deductible indicated that hurricanes were covered events, such that all hurricane-related losses were covered. Further, the deductible in *Corban* was not found in an endorsement and did not contain any of the same language as the one here.

Penthouse cites *U.S.F. & G. v. Martin*, 998 So.2d 956 (Miss. 2009), in which the court held that a policy's water exclusion did not exclude certain water damage because of a conflicting clause elsewhere in the policy. There, a clause providing coverage for water damage from "sewer or drain backup" conflicted with the policy's exclusion for water damages, which arguably excluded sewer or drain backup losses. That case is distinguishable, however, because the "Coverage Provided" portion of the policy explicitly stated that sewer or drain backup losses were covered. *Id.* at 962 ("We will pay for direct physical loss to Covered Property . . . if the loss is caused by water that: (1) backs up through sewers or drains..."). Here, the Windstorm Deductible is not part of the "Coverage" section of the policy and, more importantly, does not explicitly state that the Underwriters will pay for water losses in any circumstances.

endorsements purports to extend coverage for floods or to restrict flood exclusions," and held that the deductibles' plain language "indicates that they do nothing more than alter the deductible for damage caused by a hurricane." *Katrina*, 495 F.3d at 220.

We adopted the reasoning of *Katrina* in *Tuepker*, in which we held that, under Mississippi law, a hurricane deductible did not affect the scope of a policy's coverage. After discussing *Katrina* and citing *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312 (M.D. Fla. 2002), both of which involved deductible endorsements that were nearly identical to Penthouse's, we concluded that "[l]ike the hurricane deductible at issue in *In re Katrina*, this clause clearly only applies to the deductible, and does not affect the scope of coverage under the policy." *Tuepker*, 507 F.3d at 355.

The district court found that the deductible endorsement in *Tuepker* is materially distinguishable from the one here. We cannot agree. The *Tuepker* clause does differ from the Penthouse Deductible in two notable ways, but neither one alters our conclusion. First, the *Tuepker* deductible endorsement included the language "[a]ll other policy provisions apply." However, the deductible endorsement cannot be read in a vacuum—an insurance contract must be read as a whole, *J&W Foods Corp.*, 723 So.2d at 552, and the deductible endorsement could not function without the other provisions of the policy to define coverage and all other terms. A statement that "all other policy provisions apply" has no independent meaning because it only states the obvious; the Policy's coverage provisions, coverage exclusions, and other terms do not simply disappear if they are not expressly reserved in an endorsement. Failure to include such a provision in the Windstorm Deductible endorsement does not reflect an intent to change other policy provisions.

Second, unlike Penthouse's Windstorm Deductible, the *Tuepker* deductible expressly limited its applicability to certain perils already covered under the

terms of the policy, including wind, rain, and hail. But language expressly limiting a deductible's applicability to covered perils is redundant because, as discussed above, a deductible by definition only applies to covered perils, and can only sensibly be applied once coverage is determined to exist. It is therefore not reasonable to conclude, as the district court did here, that the lack of limiting language operates to effectively expand coverage, especially when other policy terms expressly exclude coverage. Further, the *Tuepker* court relied in part on the holdings in *Katrina* and *Paulucci*, in which "[deductible] endorsements [did] not extend the scope of the policies to cover floods"; both of those cases addressed deductibles with the same broad language as the one here. *See Tuepker*, 507 F.3d at 355. The differences between the *Tuepker* deductible and the one in this case therefore do not make the *Tuepker* holding inapplicable.

We therefore conclude that the district court erred in its holding that the Windstorm Deductible extends the Policy's coverage to include water losses associated with windstorms. Accordingly, we vacate the certified order granting judgment as a matter of law to Penthouse on the issue of liability. To the extent the remaining certified orders contain the same erroneous ruling, we reverse and vacate those orders as well.

III

The Underwriters request that we render judgment in their favor because Penthouse failed to submit evidence of a covered loss—that is, a loss caused in whole or in part by wind—above the deductible amount. We cannot agree to grant such relief. This argument was the basis for the Underwriters' summary judgment motions below, but the district court did not address the issue because the court's interpretation of the Policy rendered the Underwriters liable as a matter of law, regardless of what weather event caused the damage. Because we have now reversed the district court's ruling and vacated its judgment, we must remand to allow the court to consider such issues as remain in this case.

including the unaddressed issues raised by the Underwriters' summary judgment motions.

IV

For the foregoing reasons, we REVERSE and VACATE all four certified orders that are inconsistent with this opinion, and REMAND to the district court for its further consideration of all remaining issues.

REVERSED, VACATED, and REMANDED.