## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PENTHOUSE OWNERS ASSOC., INC.** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:07CV568-HSO-RHW** |
| | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S, LONDON** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INTEREST

BEFORE THE COURT is the Motion for Attorneys' Fees, Expenses, and Interest [418], filed by Plaintiff Penthouse Owners Association, Inc. ["Plaintiff" or "Penthouse"]. After consideration of the Motion, the pleadings, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that Plaintiff's Motion for Attorneys' Fees, Expenses, and Interest [418] should be granted in part and denied in part.

## I. BACKGROUND

The factual and procedural background of this case are more fully detailed in this Court's Memorandum Opinion and Order [440] Granting in Part and Denying in Part Defendant Underwriters' Motion to Apply the Policy's Coinsurance Condition and Windstorm or Hail Deductible, and Calculating Plaintiff's Compensatory Damages Recovery under the Policy ["Coinsurance Order"], which was also entered this date, and which is adopted and incorporated by reference herein. As the Court noted in that Order, after this case was tried, the jury returned a verdict finding that Plaintiff's buildings did suffer some damage during Hurricane Katrina caused by

wind acting independently.  Special Verdict Form [411], at p. 1.  In its Coinsurance Order [440], the Court determined that the Policy's Coinsurance provision did not penalize Plaintiff under the facts of this case, such that Plaintiff is entitled to recover $1,832,602.20 in total compensatory damages under the Policy.

In a hearing conducted after the jury returned its verdict, the Court determined that Underwriters had no arguable basis for denying Plaintiff's claim under the Policy, and that, in addition to compensatory damages, Plaintiff is entitled to recover extra-contractual damages in the form of attorneys' fees and expenses, pre-judgment interest, and costs.  Trial Tr. vol. 8, 1769, Feb. 24, 2011.  Plaintiff now asks the Court to award attorneys' fees in the amount of $2,312,312.17, litigation expenses of $279,338.28, and prejudgment interest to be calculated at the rate of 8% per annum, compounded, from and after October 29, 2005, in the amount of $950,389.02.  Mot. [418], at pp. 1, 18.  Underwriters respond that Plaintiff's requested fee award is unreasonable, that certain of Plaintiff's expenses within the claimed amount were unreasonable and unnecessary, and that, if awarded, prejudgment interest should be calculated from the date the Complaint was filed at a rate and method deemed fair.  Resp. [425], at pp. 1, 20, 23. Plaintiff has submitted over 320 pages of records *in camera* to support its request, and the Court has conducted a thorough and detailed review of those records.  Based upon its review, the Court determines that Plaintiff should be awarded extra-contractual damages as follows.

## II.  DISCUSSION

A.  Attorneys' Fees

Plaintiff requests $2,312,312.17 in attorneys' fees, which it contends is reasonable.  Mot. [418], at pp. 1–13.  In support of this assertion, Plaintiff has submitted to the Court, *in camera*, its attorneys' and paralegals' billing records. Plaintiff has submitted billing records for attorneys Don Barrett, David McMullan, Sally Williamson, Thomas P. Thrash, Gary Yarborough, Dewitt Lovelace, and Alex Peet; for paralegals Carolyn Mirick, Paul Taylor, Danny Brett, Chris Hammett, and Sandy Rosenthal; and for law clerk Sterling Brown Starns.  Underwriters have not requested access to these records, but respond with general objections.

Underwriters contend that, under Mississippi law and the facts of this case, Plaintiff's attorneys' fee request is excessive and unreasonable.  Resp. [425], at p. 1. They maintain that the hourly rates requested are unsupportable both in law and fact.  *Id.* at p. 4.  Underwriters also challenge the hours expended, arguing that certain hours were unnecessary, duplicative, or unreasonable for the task, and that others were expended on unsuccessful trial positions or witnesses not presented at trial.  *Id.* at pp. 14–20.

1.  Legal Standard

"In this diversity case, where Mississippi law supplies the rule of decision, '[s]tate law controls both the award of and the reasonableness of fees awarded.'" *Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 242 (5th Cir. 2011) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)).  Under Mississippi law, where

extra-contractual damages are awarded, the issue of attorneys' fees should be submitted to the Court as a collateral or derivative matter. *Fulton v. Miss. Farm Bureau Casualty Ins. Co.*, 2011 WL 1252251, *4 (Miss. Ct. App. April 5, 2011). The fixing of attorneys' fees is a matter ordinarily within the sound discretion of the trial court. *Id.* at *3.

In assessing whether a fee award is reasonable, Mississippi courts begin their analysis with the "lodestar" method delineated by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). *Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So. 2d 495, 520 (Miss. 2007). In the first step of this method, the Court calculates the "lodestar," which is equal to the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate for the participating lawyers. The resulting figure provides an objective basis upon which to make an initial assessment of the value of a lawyer's services. *Hensley*, 461 U.S. at 434. Plaintiff bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Id.* at 436. The Court should exclude from this initial fee calculation hours which were not "reasonably expended." *Id.* at 434. The Supreme Court has explained that:

> [c]ases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Hensley*, 461 U.S. at 434.

Where a prevailing plaintiff succeeds on only some of his claims for relief, a court must consider whether the plaintiff failed to prevail on claims which were unrelated to the claims on which he succeeded, and whether Plaintiff achieved a level of success that makes the hours expended a satisfactory basis for making a fee award. *Id.* When distinctly different claims for relief, based upon different facts and legal theories, are brought in the same suit against the same defendant, counsel's work on one claim will be unrelated to his work on another claim. *Id.* Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved, and no fee may be awarded for services on the unsuccessful claim. *Id.*

When a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Id.* at 435. The Supreme Court has explained that "[s]uch a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

In determining the lodestar, "'reasonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v.*

*Lufkin Industries, Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  "[T]he burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Id.* (quoting *Blum*, 465 U.S. at 896 n.11).

Once the lodestar figure is determined, Mississippi courts can adjust it based upon the twelve factors announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  *Tupelo Redevelopment Agency*, 972 So. 2d at 521. Mississippi courts also consider the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct and those articulated in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).  *Id.* at 520–521.  The Rule 1.5 and *McKee* factors are very similar to those utilized by the United States Supreme Court.  *Id.*

The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Hensley*, 461 U.S. at 430 n.3 (1983) (citing *Johnson*, 488 F.2d at 717–19).  The "undesirability" of the case is the only factor not contained, "in some shape, form or fashion" in the factors listed

in the Mississippi Rules of Professional Conduct.  *Tupelo Redevelopment Agency*, 972

So. 2d at 521.  The *McKee* factors include

> the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

*Id.* (quoting *McKee*, 418 So. 2d at 767).

The United States Supreme Court has cautioned, however, that the lodestar

method yields a fee that is presumptively sufficient to achieve the objective of

providing a reasonable fee, and the presumption is a "strong one."  *Perdue v. Kenny*

*A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010).  The United States Supreme Court has

stated that many of the *Johnson* "factors usually are subsumed within the initial

calculation of hours reasonably expended at a reasonable hourly rate."  *Hensely*, 461

U.S. at 434 n.9.

Here, Plaintiff bears the burden of demonstrating the reasonableness of the

amount of its attorneys' fees, including any adjustments or enhancements.  *Blum v.*

*Stenson*, 465 U.S. 886, 901–02 (1984).  To obtain an enhancement, Plaintiff must

produce "specific evidence" which supports the award.  *Perdue*, 130 S. Ct. at 1673. In

addition, "[t]he lodestar may not be adjusted due to a *Johnson* factor, however, if the

creation of the lodestar amount already took that factor into account; to do so would

be impermissible double counting."  *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d

795, 800 (5th Cir. 2006).

-7-

2.     <u>The Parties' Contentions</u>

With respect to the number of hours worked, Underwriters maintain that the Court "must compare the information provided by each attorney to determine and exclude any hours which were duplicated by more than one attorney or any hours which were unnecessary in light of the work performed by other attorneys and paralegals," and "must reduce the hours submitted for any projects which were overstaffed." Resp. [425], at p. 15.  Underwriters object to Plaintiff sending multiple attorneys to at least seven depositions, as well as sending five attorneys and multiple paralegals to attend the trial.  *Id.* at pp. 15–16.

Plaintiff responds that its

> counsel made every effort to efficiently staff this case during its long history.  David McMullan and Gary Yarborough handled most of the discovery, including depositions.  Mr. McMullan and Mr. Yarborough attended key fact witness depositions, which were scheduled on consecutive days, so as to allow for adequate preparation for the following depositions.  At that time the parties were conducting discovery on a tight schedule, with trial set for July, 2008.  Given the number of lawyers involved for the defense, the staffing of the case by Penthouse was reasonable.

Resp. [429], at p. 8.

Underwriters identify seven depositions at which Plaintiff was represented by two or more attorneys.  Aff. of Whitman B. Johnson, III [425-3], at ¶ 14.  These include the depositions of William Worsham, Paul Colman, James Shultz, Leonard R. Deloteus, and Doug McColl, and two depositions of Martin Winfree.  *Id.*  In the bills submitted *in camera*, Mr. McMullan and Mr. Yarborough both charged for attending five (5) of these depositions.  Of the remaining two (2) depositions, Mr.

McMullan and Mr. Yarborough each billed separately for only one (1) of them.  The Court also reviewed the bills submitted *in camera* for the five (5) attorneys, two (2) paralegals, and one (1) law clerk who attended trial on Plaintiff's behalf and notes that all did billable work either inside or outside of the courtroom during the trial.

Underwriters ask the Court to reduce any "incorrectly staffed" hours, such as where an attorney's work could have been accomplished through non-lawyers or where a paralegal performed secretarial work.  Resp. [425], at p. 16.  Underwriters also suggest that "travel time is only compensated in an attorney fee request at 50% of the normal rate unless the attorney can show that they conducted legal work while traveling."  *Id.* (citing *Baker v. Washington Mut. Finance Group, LLC,* 2007 WL 571103, *12 (S.D. Miss. 2007)).

Plaintiff replies that "[t]his case, unfortunately, required expensive and time-consuming travel," including the fact that it "was required to take depositions of key fact witnesses and corporate representatives located in other states and in the United Kingdom."  Reply [429], at p. 5.  Plaintiff states that "[g]iven Underwriters' refusal to produce a corporate representative in the United States, full travel time and costs should certainly be awarded for the 30(b)(6) deposition."  *Id.*

Underwriters next assert that the Court should exclude hours expended on unsuccessful trial positions.  Resp. [425], at p. 16.  Underwriters refer to the interlocutory appeal of this matter to the United States Court of Appeals for the Fifth Circuit, *id.* at p. 17, as well as "time trying to obtain unrelated documents from Rimkus Engineering and attempting to pierce the attorney/client privilege by forcing

the deposition of one of Underwriters' attorneys," *id.* at p. 18.  Underwriters further request that the Court exclude hours expended by Plaintiff's counsel in "designating, preparing, or deposing" certain expert witnesses who did not testify at trial, either because Plaintiff apparently chose not to offer their testimony or their testimony was excluded by the Court.  These witnesses include Dr. Pat Fitzpatrick, Dr. Aaron "Bill" Williams, Col. Richard Henning, Mr. Don Baker, Mr. Martin Winfree, Mr. Ray Deloteus, and Mr. Al Lewando.  *Id.* at pp. 18–19.

Plaintiff responds that all of its claims were successful "with the jury finding a breach of contract and the Court finding that there was no arguable basis for the denial" of Plaintiff's insurance claim.  Reply [429], at p. 6.  Plaintiff contends that it should not be penalized for failing to concede Underwriters' arguments in the interlocutory appeal of this matter, as the ruling which was the subject of that appeal "was well-reasoned and predictable, especially in light of the fact that other courts (including Mississippi courts) had already found the policy language at issue to be ambiguous."  *Id.*  Plaintiff cites the Fifth Circuit's July 15, 2010, Opinion in this matter which "acknowledged that the deductible language at issue 'may be misleading.'" *Id.* (quoting Op. [356], at p. 6).  Plaintiff also points out that the denial of Underwriters' Motion for Summary Judgment on the contract claims was not reversed by the Fifth Circuit, but was remanded and then denied by this Court.  *Id.* at pp. 6–7.

As for their designated experts, Plaintiff states that it "provided Underwriters extensive FRCP 26 reports from these experts, making depositions unnecessary."  *Id.*

at p. 7.  Plaintiff notes that it did not depose Underwriters' experts prior to trial.  *Id.*
With respect to Mr. Martin Winfree, Plaintiff argues that it "designated Mr. Winfree
following a ruling by Judge Senter regarding the method of proof of actual cash
value."  *Id.*  After Mr. Winfree provided his report and was deposed by Underwriters,
"Judge Senter clarified his order, making Mr. Winfree's approach no longer
applicable."  *Id.*  Plaintiff contends that "Mr. Winfree's testimony was not struck
under *Daubert*, but rather excluded by an *in limine* order due to it no longer being
relevant to the issue of damages."  *Id.*

Underwriters additionally request that the Court determine whether
Plaintiff's attorneys and paralegals prepared contemporaneous time records and,
where they did not, reduce those hours by a percentage to adjust for "billing
judgment."  Resp. [425], at p. 19.  Underwriters finally ask that the Court exclude
any time entries "which are insufficiently described so as to prohibit the Court from
being able to determine whether the task was required and necessary and/or
whether the number of hours spent on the task were reasonable."  *Id.* at p. 20.
Plaintiff responds that its "detailed time submissions are adequate to allow the
Court to determine what hours should be included for reimbursement."  Reply [429],
at p. 7 (citing *Bode v. United States*, 1044, 1047 (5th Cir. 1990)).  Plaintiff points out
that the total number of hours it reported are comparable to those reported by
Underwriters' counsel.  *Id.* at p. 8.  Plaintiff also states that it "submitted time only
for the hours which were productive."  *Id.*

As for the requested hourly rates, Underwriters contend that Plaintiff's counsel's "requested hourly rates are far beyond what is reasonable and customary." Resp. [425], at p. 4. Underwriters maintain that the Court should consider only rates which are reasonable in the local community, meaning the State of Mississippi. *Id.* Underwriters ask that the requested hourly rates be reduced to one commensurate with certain Mississippi Bar Association Surveys, and with Defense counsels' respective hourly rates of $200.00 and $260.00 (now $285.00, effective January 2011). *Id.* at pp. 4–5.

Plaintiff responds that the rates charged by Underwriters' counsel are "insurance defense rates, rates that are traditionally less than those commonly charged in complex matters such as this case." Reply [429], at p. 2. Plaintiff asks the Court to focus on the skill, experience, and reputation of the attorneys, the difficulty of the questions involved in the suit, and the prevailing rates for attorneys in this judicial district. *Id.* (quoting *Shirley v. Chrysler First, Ins.*, 763 F. Supp. 856, 857 (N.D. Miss. 1991)). Plaintiff relies upon affadivts from attorneys in Mississippi, which it submits in support of its Motion. *Id.*

    3.   <u>Discussion</u>

The following chart summarizes the requested hourly rate, billable hours, and lodestar for each billing attorney and paralegal for whom Plaintiff seeks an award of fees.

| Timekeeper | Requested Hourly Rate | Requested Billable Hours | Requested Lodestar |
|---|---|---|---|
| **Don Barrett, Attorney** | $475.00 | 924.31[1] | $439,047.25 |
| **David McMullan, Attorney** | $345.00 | 1,279.5 | $441,427.50 |
| **Sally Williamson, Attorney** | $300.00 | 235.25[2] | $70,575.00 |
| **Carolyn Mirick, Paralegal** | $90.00 | 454.0 | $40,860.00 |
| **Sterling Brown Starns, Law Clerk** | $90.00 | 310.5 | $27,945.00 |
| **Paul Taylor, Paralegal** | $75.00 | 5.0 | $375.00 |
| **Danny Brett, Paralegal** | $75.00 | 279.0 | $20,925.00 |
| **Chris Hammett, Paralegal** | $75.00 | 250.4 | $18,780.00 |
| **Thomas P. Thrash, Attorney** | $425.00 | 1,258.78 | $534,981.50[3] |
| **Gary Yarborough, Jr., Attorney** | $225.00 | 1,882.8 | $423,630.00 |
| **Dewitt Lovelace, Attorney** | $375.00 | 711.0 | $266,625.00 |
| **Alex Peet, Attorney** | $225.00 | 13.7 | $3,082.50 |
| **Sandy Rosenthal, Paralegal** | $110.00 | 218.7 | $24,057.00 |
| **TOTAL** | | 7,822.94 | $2,312.310.75 |

[1]The chart included in Plaintiff's Motion requests 924.3 billable hours. Mot. [418], at pp. 4–5. However, the number reflected in Mr. Barrett's bills submitted is 924.31. The 924.31 figure from the bills presumably is the correct number, as the requested lodestar ($439,047.25) in the chart divided by Barrett's requested hourly rate ($475.00) equals 924.31. The Court will use this figure in its calculations.

[2]Plaintiff's chart requests 235.3 billable hours for Ms. Williamson, but the bills reflect that the correct figure is 235.25. Mot. [418], at pp. 4–5. Her requested lodestar ($70,575.00) divided by her requested hourly rate ($300.00) results in 235.25 hours, which is the figure the Court will use in its calculations.

[3]Plaintiff's chart and Thomas P. Thrash's bill use the hourly rate of $425.00 and a total of 1,258.78 hours, and both request a total lodestar of $534,982.92. However, $425.00 multiplied by 1,258.78 equals $534,981.50. The Court will therefore use this figure.

Having reviewed and considered the parties' arguments, the evidence presented, and the relevant legal authorities, the Court finds that the number of hours reasonably expended by, and the reasonable hourly rates for, each attorney and paralegal are as follows.

   a.    *Attorney Don Barrett*

Plaintiff asks the Court to employ an hourly rate of $475.00 per hour for Mr. Barrett's time expended in this case. He submitted affidavits stating that he has practiced law for over forty-one years, Aff. of John W. (Don) Barret, at p. 1, attached as Attach. "1" to Ex. "1" to Pl.'s Mot. [418], and that senior lawyers such as himself "normally bill in the range of $375 to $475 per hour," Aff. of Don Barrett, at ¶ 4, attached as Ex. "1" to Pl.'s Mot. [418]. Based upon his interviews and experience, Mr. Barrett states that the "standard rates" charged on the Mississippi Gulf Coast are somewhat lower, such as $275.00 to $400.00 for partners. *Id.* at ¶ 5.

Defense counsel has presented affidavits attesting to their hourly rates. Paul Fields' billable rate for this matter increased from $260 to $285 during the course of this litigation. Aff. of Paul L. Fields, Jr., at ¶ 8, attached as Ex. "D" to Def.'s Resp. [425]. Mr. Fields has been practicing law for twenty-two years, is a partner at a firm in Atlanta, Georgia, and specializes in insurance coverage litigation. *Id.* at ¶ 2. Whitman Johnson's billable rate for this matter was $200 per hour. Aff. of Whitman B. Johnson, at ¶ 7, attached as Ex. "C" to to Def.'s Resp. [425]. Mr. Johnson has been practicing law for about thirty-two years and is a member of a law firm in

Jackson, Mississippi. *Id.* at ¶ 3. His "practice has historically been focused on the field of insurance defense." *Id.* at ¶ 4.

After reviewing the evidence presented and the record as a whole, including Mr. Barrett's affidavits, the Court is persuaded that Mr. Barrett's requested rate should be reduced to $375.00. The Court finds that $375.00 is a reasonable hourly rate for an attorney of Mr. Barrett's experience, given the complexities of this case. According to Mr. Barrett, this figure falls within the range of hourly rates attorneys in his position normally charge, and it comports with what Mr. Barrett represents partners on the Mississippi Gulf Coast charge. Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].

The Court further finds that Plaintiff has demonstrated that all of Mr. Barrett's hours billed were reasonably expended in this litigation, except for three time entries totaling 1.5 hours. These time entries include an entry from August 6, 2009, which does not appear to be relevant to the present case, and entries from March 19 and 27, 2011, which appear either unrelated to this case or billed on the incorrect date, as both were billed after the trial in this matter concluded. March 27, 2011, was four days after Plaintiff filed the present Motion [418]. Deleting these 1.5 hours from Plaintiff's submitted 924.31 hours for Mr. Barrett results in a total of 922.81 hours he reasonably expended in this litigation. Multiplying this figure by his reasonable hourly rate of $375.00, results in a lodestar for Mr. Barrett of $346,053.75.

b.    *Attorney David McMullan*

In determining Mr. McMullan's lodestar, Plaintiff asks the Court to use a rate of $345.00 per hour.  Mr. McMullan was admitted to the Mississippi Bar in 1989. CV of David McMullan, Jr., at p. 1, attached as Attach. "3" to Ex. "1" to Pl.'s Mot. [418].  He practices in the Barrett Law Group, P.A., in Lexington, Mississippi.  *Id.* Mr. Barrett has represented that attorneys with experience comparable to Mr. McMullan's "charge in the $300-$325 range," but notes that the standard rates on the Mississippi Gulf Coast are somewhat lower.  Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].  The rate Plaintiff asks the Court to find reasonable with respect to Mr. McMullan exceeds this range.  The Court therefore will reduce Mr. McMullan's hourly rate from $345.00 to $300.00, to comport with the range indicated by Mr. Barrett.  *See id.* at ¶ 4.  The Court finds $300.00 to be a reasonable hourly rate for an attorney of Mr. McMullan's experience and expertise, given the complexities of this case.

The Court further finds that Plaintiff has shown that all of Mr. McMullan's hours billed were reasonably expended in this litigation, for a total of 1,279.5 hours. Mr. McMullan's lodestar in this case is therefore $383,850.00.

c.    *Attorney Sally Williamson*

The Court finds the 235.25 hours billed by attorney Sally Williamson to have been reasonably expended in this case.  However, based upon the description in the time entries, the work for which Ms. Williamson billed appears to resemble paralegal work.  Much of it involved summarizing depositions.  The Court will therefore reduce

the rate charged for her work from $300.00 to $90.00 an hour, which it finds to be a reasonable hourly rate for the type of work Ms. Williamson was asked to perform in this particular case.[4]  Therefore, the Court calculates Ms. Williamson's lodestar to be $21,172.50.

> d.    *Paralegal Carolyn Mirick*

The Court finds that Carolyn Mirick's rate of $90.00 is a reasonable paralegal rate.  The Court further finds that all of Ms. Mirick's hours billed were reasonably expended in this litigation, totaling 454.0 hours.  Multiplying Ms. Mirick's $90.00 hourly rate by the 454.0 hours reasonably expended results in a lodestar of $40,860.00.

> e.    *Law Clerk Sterling Brown Starns*

The Court finds Ms. Starn's hourly rate of $90.00 to be reasonable in this matter.  Plaintiff has demonstrated that all of Ms. Starn's hours billed were reasonably expended in this litigation, except for one time entry totaling 8.0 hours.  This "Scan exhibits" time entry reflects a clerical or secretarial task, and this time will be excluded from the Court's calculations.  *See Coleman v. Houston Independent School Dist.*, 202 F.3d 264, 1999 WL 1131554, *9 (5th Cir. 1999).  The Court

---

[4]This reduction is not intended to reflect upon Ms. Williamson's reputation in the community or her legal experience.  The Court takes judicial notice of the fact that the The Mississippi Bar Association Attorney Directory indicates that Ms. Williamson was admitted to practice law in Mississippi in September 1990.  This reduction is due to the nature of the tasks she was apparently asked to perform in this case.

therefore determines that Ms. Starns reasonably expended 302.5 hours in this litigation at a $90.00 hourly rate, resulting in a total lodestar of $27,225.00.

### f.   Paralegal Paul Taylor

The Court finds Mr. Taylor's $75.00 hourly paralegal rate reasonable.  The Court further finds that Plaintiff has shown that all of Mr. Taylor's hours billed, totaling 5.0 hours, were reasonably expended in this litigation.  Mr. Taylor's lodestar is $375.00.

### g.   Paralegal Danny Brett

The Court finds that Mr. Brett's hourly rate of $75.00 is reasonable.  Plaintiff has also demonstrated that all of Mr. Brett's hours billed were reasonably expended in this litigation, except for certain time entries which reflect clerical or secretarial tasks.  These times entries, from January 20 and 31, 2011, and February 4, 12, and 13, 2011, total 23.0 hours, and this time will be excluded from the Court's calculations.  *See Coleman*, 1999 WL 1131554, at *9.  The Court therefore determines that Mr. Brett reasonably expended 256.0 hours in this litigation at a rate of $75.00 per hour, for a total lodestar of $19,200.00.

### h.   Paralegal Chris Hammett

The Court finds Mr. Hammett's hourly rate of $75.00 to be reasonable in this matter.  Plaintiff submitted bills for Mr. Hammett's work totaling 250.4 hours.  The Court finds that most of the entries represent time reasonably expended on legal work in this litigation.  However, most of the billing entries are block billed entries, each of which contain two items for copying documents and entering time, which are

clerical or secretarial in nature, and are therefore not recoverable. *See Coleman*, 1999 WL 1131554, at *9. The Court finds that these entries comprise about one-fourth of Mr. Hammett's billing entries. Accordingly, the Court will reduce Mr. Hammett's total hours by one-fourth, which results in 187.8 hours, which the Court finds were reasonably expended in this case. Mr. Hammett's lodestar is therefore $14,085.00.

        i.    *Attorney Thomas P. Thrash*

Plaintiff requests an hourly rate of $425.00 per hour for Thomas P. Thrash. Thrash has practiced law for thirty-one years. Aff. of Thomas P. Thrash, at ¶ 1, attached as Attach. "2" to Ex. "1" to Pl.'s Mot. [418]. Thrash avers that he has submitted attorney fee requests in the past in various other cases in amounts between $375.00 and $600.00 per hour. Plaintiff's counsel Mr. Barrett has stated that senior lawyers of Mr. Thrash's experience normally bill in the range of $375.00 to $475.00 per hour, but that the range for partners on the Mississippi Gulf Coast is somewhat lower, at $275.00 to $400.00 per hour. Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].

After reviewing the evidence presented and the record as a whole, including Mr. Barrett's and Mr. Thrash's affidavits, the Court is persuaded that Mr. Thrash's requested rate should be reduced to $350.00. The Court finds that $350.00 is a reasonable hourly rate for an attorney of Mr. Thrash's experience and expertise, given the complexities of this case. According to Mr. Barrett, this figure fits within the range attorneys with experience similar to Mr. Thrash normally charge, and it

comports with what Mr. Barrett indicates partners on the Mississippi Gulf Coast charge.  Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].

The Court further finds that Plaintiff has established that all of Mr. Thrash's hours billed, totaling 1,258.78, were reasonably expended in this litigation.  Mr. Thrash's lodestar in this case is therefore $440,573.00.

j.    *Attorney Gary Yarborough, Jr.*

Plaintiff asks the Court to approve an hourly rate of $225.00 per hour for Mr. Yarborough's time.  Mr. Yarborough was admitted to the Mississippi Bar in 2006, and practices at a law firm in Bay St. Louis, Mississippi.  CV of Gary M. Yarborough, Jr., at p. 1, attached as Attach. "4" to Ex. "1" to Pl.'s Mot. [418].  According to Mr. Barrett's Affidavit, attorneys with experience comparable to Yarborough charge in the $200.00 to $250.00 per hour range, but associates on the Mississippi Gulf Coast typically charge a lower rate, $185.00 per hour.  Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].

After reviewing the evidence presented and the record as a whole, including Mr. Barrett's affidavit and Mr. Yarborough's *Curriculum Vitae*, the Court is persuaded that Mr. Yarborough's requested rate should be reduced to $200.00 per hour.  The Court finds that $200.00 is a reasonable hourly rate in the relevant legal community for an attorney of Mr. Yarborough's experience, given the complexities of this case.  According to Mr. Barrett, this figure fits within the range of hourly rates attorneys with experience similar to Mr. Yarborough normally charge, and it is more

in line with what Mr. Barrett represents associates on the Mississippi Gulf Coast charge.  Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].

The Court further finds that Plaintiff has shown that Mr. Yarborough's hours billed were reasonably expended in this litigation, with the exception of eighteen specific time entries which total 131.5 hours.  These time entries include 2 hours on February 19, 2008, 3 hours on February 20, 2008, 1 hour on February 21, 2008, and 2 hours on February 22, 2008, for "[h]aving issued and served subpoena *duces tecum*" on certain persons, and 1.5 hours on March 23, 2008, for "[p]reparing to issue and serve subpoena *duces tecum* for Daniel Picou and Malise Dennard."  The Court finds that these entries should be reduced from a total of 9.5 to 3.5 hours.

In addition, the Court finds that the total number of hours spent on responding to Underwriters' Motion for Summary Judgment [365] filed on September 1, 2010, should be reduced.  Though it is not entirely clear from the records submitted, the Court discerns that Mr. Yarborough spent approximately 122 hours total in researching and preparing Plaintiff's Response [373], Memorandum [374], and attached exhibits.  This is reflected in time entries dated September 1, 2008, and September 6 through 16, 2008.  The Court recognizes that Plaintiff's Memorandum was necessarily lengthy and involved voluminous exhibits given the nature of the issues involved.  However, based on the billing entries provided, many of the descriptions are of insufficient detail for the Court to conclude that 122 hours is reasonable.  Based on the billing descriptions and the Response [373], Memorandum [374], and attached exhibits themselves, the Court concludes that 35

hours would have been a reasonable amount of time to spend in this endeavor.  The Court will reduce Mr. Yarborough's total hours accordingly.   The Court therefore finds that the reasonable number of hours expended by Mr. Yarborough in this litigation total 1,789.8.  His lodestar is therefore $357,960.00.

k.   *Attorney Dewitt Lovelace*

Plaintiff asks the Court to approve an hourly rate of $375.00 per hour for Mr. Lovelace's time in this case.  Lovelace was admitted to the Mississippi Bar in 1973 and practices with his law firm in Miramar Beach, Florida.  CV of Dewitt M. Lovelace, at p. 1, attached as Attach. "5" to Ex. "1" to Pl.'s Mot. [418].  According to Mr. Barrett's Affidavit, attorneys with experience comparable to Mr. Lovelace charge in the $375.00 to $475.00 per hour range, but partners on the Mississippi Gulf Coast typically charge a lower rate, $275.00 to $400.00 per hour.  Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].  After reviewing the evidence presented and the record as a whole, including Mr. Barrett's Affidavit and Mr. Lovelace's *Curriculum Vitae*, the Court is persuaded that Plaintiff's requested rate for Mr. Lovelace should be reduced to $350.00 per hour.  The Court finds this to be a reasonable hourly rate for an attorney of his experience and expertise in the relevant legal community, given the complexities of this case.

The Court further finds that Plaintiff has shown that all of Mr. Lovelace's hours billed were reasonably expended in this litigation, except for one time entry on April 25, 2007, for 0.40 hours.  It is unclear from the description exactly what task Mr. Lovelace performed with respect to this entry.  Therefore, the Court finds that

Mr. Lovelace reasonably expended a total of 710.6 hours in this litigation, for a total lodestar of $248,710.00.

> l.    *Attorney Alex Peet*

Plaintiff asks the Court to approve an hourly rate of $225.00 per hour for attorney Alex Peet's time.  Mr. Peet was admitted to the Florida Bar in 2007 and practices at Mr. Lovelace's law firm in Miramar Beach, Florida.  CV of Alexander Wells Peet, at p. 1, attached as Attach. "6" to Ex. "1" to Pl.'s Mot. [418].  According to Mr. Barrett's Affidavit, attorneys with experience comparable to Mr. Peet charge in the $200.00 to $250.00 per hour range; however, associates on the Mississippi Gulf Coast typically charge a lower rate, $185.00 per hour.  Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].  As the Court found earlier with respect to Mr. Yarborough, who apparently has a level of experience comparable to that of Mr. Peet, Mr. Peet's requested rate should likewise be reduced to $200.00 per hour.  The Court finds that $200.00 is a reasonable hourly rate for an attorney of Mr. Peet's experience, given the complexities of this case.  According to Mr. Barrett, this figure falls within the range of hourly rates such attorneys normally charge.  Aff. of Don Barrett, at ¶¶ 4–5, attached as Ex. "1" to Pl.'s Mot. [418].

The Court further finds that Plaintiff has estbalished that all of Mr. Peet's hours were reasonably expended in this litigation, for a total of 13.7 hours.  Mr. Peet's lodestar in this case is therefore $2,740.00.

### m.   *Paralegal Sandy Rosenthal*

The Court finds that the requested hourly rate of $110.00 for paralegal Sandy Rosenthal should be reduced to $90.00, which it finds reasonable and which is more consistent with Plaintiff's other requested paralegal rates.  The Court further finds that Plaintiff has demonstrated that all of Ms. Rosenthal's hours billed were reasonably expended in this litigation, totaling 218.7 hours.  Ms. Rosenthal's lodestar is $19,683.00.

### n.   *Summary of Legal Fees*

In sum, the Court finds that the total number of hours reasonably expended in this matter by Plaintiff's attorneys and paralegals was 7,634.44 hours.  The Court notes that this total number of hours is comparable to those reportedly billed by Underwriters' own counsel.  Mr. Johnson reported that, at his law firm, attorneys billed 2,378.90 hours and paralegals billed 446.70 hours, Breakdown of Hours, at p. 1, attached as Ex. "A" to Ex. "C" to Def.'s Resp. [425], and that at the Larzelere, Picou, Wells, Simpson, Lonero firm, attorneys billed about 762.9 hours and paralegals or legal assistants billed about 35 hours, *id.*  Mr. Fields reported that, at his law firm, attorneys billed 2,995.10 hours and paralegals billed 978.70 on this file, Aff. of Paul L. Fields, Jr., at ¶, attached as Ex. "D" to Def.'s Resp. [425].  These numbers result in at least 6,136.9 attorney hours and 1,460.4 paralegal hours spent on this matter, for a total of at least 7,597.3 hours expended on behalf of Underwriters.

After excluding all time that is excessive, duplicative, or inadequately documented, and after taking into consideration all of the above-stated reductions, the Court therefore calculates the total "lodestar" for Plaintiff's recoverable attorneys' fees in this matter as $1,922,487.25.  The Court has reviewed the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), in Rule 1.5 of the Mississippi Rules of Professional Conduct, and in *McKee v. McKee*, 418 418 So. 2d 764, 767 (Miss. 1982), in determining the reasonableness of the amount of attorneys' fees, and finds that no adjustments are warranted.  The Court therefore finds that Plaintiff is entitled to recover as extra-contractual damages reasonable attorneys' fees in the amount of $1,922,487.25.  The following chart summarizes the Court's conclusions.

| Timekeeper | Reasonable Hourly Rate | Hours Reasonably Expended | Lodestar |
|---|---|---|---|
| Don Barrett, Attorney | $375.00 | 922.81 | $346,053.75 |
| David McMullan, Attorney | $300.00 | 1,279.5 | $383,850.00 |
| Sally Williamson, Attorney | $90.00 | 235.25 | $21,172.50 |
| Carolyn Mirick, Paralegal | $90.00 | 454.0 | $40,860.00 |
| Sterling Brown Starns, Law Clerk | $90.00 | 302.5 | $27,225.00 |
| Paul Taylor, Paralegal | $75.00 | 5.0 | $375.00 |
| Danny Brett, Paralegal | $75.00 | 256.0 | $19,200.00 |
| Chris Hammett, Paralegal | $75.00 | 187.8 | $14,085.00 |
| Thomas P. Thrash, Attorney | $350.00 | 1,258.78 | $440,573.00 |
| Gary Yarborough, Jr., Attorney | $200.00 | 1,789.8 | $357,960.00 |

| Dewitt Lovelace, Attorney | $350.00 | 710.6 | $248,710.00 |
|---|---|---|---|
| Alex Peet, Attorney | $200.00 | 13.7 | $2,740.00 |
| Sandy Rosenthal, Paralegal | $90.00 | 218.7 | $19,683.00 |
| **TOTAL** | | 7,634.44 | $1,922,487.25 |

The Court is cognizant of the fact that an award of attorneys' fees in the amount of $1,922,487.25 exceeds Plaintiff's contract damages of $1,832,602.20 in this case. However, this fact alone does not render the award excessive. *See, e.g., Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 354–55 (5th Cir. 2001) (applying Texas law and holding that the disproportion alone of an attorneys' fee award, which was more than three times the trebled damages award and more than nine times the actual damages, does not render the award of attorneys' fees excessive). Plaintiff's contract damages in this case were fixed as of the date of Hurricane Katrina, on August 30, 2005, pursuant to the terms of its insurance contract with Underwriters. Underwriters breached that contract by at least July 12, 2006, when they denied Plaintiff's claim in its entirety. It has taken over four years and eight months of litigation for Plaintiff to recover its contract damages. This includes an interlocutory appeal to the United States Court of Appeals for the Fifth Circuit. Under the circumstances of this case, and for the reasons stated earlier, the Court is persuaded that an attorneys' fee award in the amount of $1,922,487.25 is reasonable in this case.

B.   <u>Expenses</u>

Plaintiff seeks to recover $279,123.42 in litigation expenses incurred by its attorneys over the course of these proceedings. Plaintiff has submitted

documentation of its expenses *in camera*.  It asks for $188,424.65 in expenses
incurred by the Katrina Litigation Group; $70,519.44 incurred by Barrett Law
Office, P.A.; $9,428.56 incurred by Hesse & Butterworth; $2,845.88 incurred by
Thrash Law Firm; and $7,904.92 incurred by Lovelace Law Firm.[5]  Underwriters
have not requested a copy of these expense sheets.  They offer general objections to
Plaintiff's litigation expenses.

    1.   <u>Legal Standard</u>

    As with attorneys' fees, Mississippi law directs that the Court determine
which expenses were reasonably incurred when taxing another litigant with those
expenses.  *BellSouth Pers. Commc'ns, LLC v. Bd. of Supervisors of Hinds County,
Miss.*, 912 So. 2d 436, 448 (Miss. 2005).  In the context of a civil rights case, the
United States District Court for the Northern District of Mississippi has explained
that,

> [i]t is generally not the normal practice of an attorney, however, to bill his
> client for every expense incurred by the attorney in connection with the
> litigation.  He must absorb some of the costs of doing business as an
> attorney.  It should not be expected, therefore, that a court will award him
> those costs which he would otherwise have borne himself.  In the opinion
> of the court, an award of out-of-pocket expenses should be limited to those
> expenses which an attorney would normally, customarily, and routinely
> bill to a fee-paying client.

*Loewen v. Turnipseed*, 505 F. Supp. 512, 517 (N.D. Miss. 1980).

"[A]ll reasonable expenses which would be billed to a fee-paying client should be
allowed."  *Miss. State Chapter Operation Push v. Mabus*, 788 F. Supp. 1406, 1423

---

[5]These individual numbers actually total $279,123.45.  However, the Court
will use Plaintiff's requested figure of $279,123.42.

(N.D. Miss. 1992) (citing *Loewen*, 505 F. Supp. at 517) (challenging certain

Mississippi statutes under the Voting Rights Act of 1965).

    2.   <u>The Parties' Arguments</u>

    Underwriters argue that Plaintiff is not entitled to expenses associated with

certain witnesses who were not offered at trial, including designated expert

witnesses Dr. Pat Fitzpatrick, Dr. Aaron "Bill" Williams, Col. Richard Henning, Mr.

Don Baker, Mr. Martin Winfree, Mr. Ray Deloteus, and Mr. Al Lewando.  Resp.

[425], at pp. 18–19.  Underwriters point out that Winfree, Deloteus, and Lewando

were prohibited by the Court from providing expert testimony in this matter, and

they maintain that Plaintiff should not be able to recover any expenses related to

their designation and preparation.  *Id.*; *see also id.* at p. 22.  Underwriters contend

that they "should not be obligated to pay any expenses related to the Plaintiff's

opposition to Underwriters' successful appeal to the Fifth Circuit Court of Appeals,"

or for any expenses related to the issues appealed to the Fifth Circuit.  *Id.* at p. 22.

    Underwriters further assert that "[t]he Court should not allow any expenses

which the Plaintiff did not document or detail and which the Plaintiff did not explain

the reasonableness and necessity of the expense."  *Id.* at p. 21 (citing *Mississippi*

*State Chapter Operation Push v. Mabus* 788 F. Supp. 1406, 1423 (N.D. Miss. 1992)).

They maintain that any "[v]ague expense descriptions which do not specify the

purpose of the expense and its connection to the case, should not be reimbursed."  *Id.*

(citing *Baker v. Washington Mut. Finance Group, LLC*, 2007 WL 571103, *18 (S.D.

Miss. 2007)).  Underwriters next claim that "[c]osts for multiple copies of documents

prepared for the convenience of trial counsel are not allowed expenses and should be reduced," and that if Plaintiff fails to demonstrate all claimed photocopies were necessary and provided to the Court and counsel opposite, any request for these expenses should be reduced. *Id.* (citing *Baker*, 2007 WL 571103, at *17). Underwriters further assert that videographer fees cannot be recovered as expenses, *id.* (citations omitted), although they "acknowledge that videographer expenses are probably recoverable to the extent a video deposition or excerpts thereof were used at trial," *id.* at p. 21 n.12.

Underwriters also object to Plaintiff's travel expenses, in that Plaintiff's retained counsel live in three different states, Mississippi, Arkansas, and Florida, and its counsel in Mississippi "were spread out across the state . . . ." *Id.* at p. 22. According to Underwriters, they "should not bear the expenses related to the fact that the lawyers the Plaintiff chose to hire lived out of state or far from the county in which suit was filed." *Id.* Underwriters also complain that "excessive charges for mileage, taxis, and parking should be excluded as such charges are generally part of an attorney's overhead." *Id.* at p. 21 (citing *Baker*, 2007 WL 571103, at *19).

Plaintiff responds that its "travel and other expenses, it believes, are likely comparable to or less than Underwriters' counsel, who traveled from Jackson, Mississippi and Atlanta, Georgia." Reply [429], at p. 8. Plaintiff notes that Underwriters chose not to provide expense information in its response. *Id.* Plaintiff also states that it used in-house paralegals to conserve costs. *Id.*

3.    <u>Discussion</u>

The Court has reviewed the expense reports provided by each law firm representing Plaintiff.  It will address the expenses incurred by each firm in turn.

a.    *Katrina Litigation Group*

Plaintiff submits three separate expense reports for the Katrina Litigation Group ["KLG"], a "New KLG" report with payments dated from January 9, 2009, through March 14, 2011, an "Old KLG" report with expenses dated from May 20, 2008, through December 15, 2008, and a "CONDOS" report with entries from April 23, 2006, through February 26, 2008.  While the Court finds the majority of these expenses were reasonably and necessarily incurred by Plaintiff, there are some which must be excluded.

(1).    *New KLG Report*

The New KLG expense report totals $121,943.92.  Certain payments on the New KLG report were made to law offices involved in this litigation, including a $7,735.18 check to "Thomas Thrash Att..." on February 12, 2009, with a memo line of "Penthouse v..."; a $734.00 check to Barrett Law Office on May 14, 2009, with a memo line as "Penthouse C..."; and a $8,558.86 check to "Thomas Thrash Att..." on June 18, 2009, with a memo line of "Penthouse e...."  The Court cannot discern from the records the nature of the expenses for which these payments were made, and is unable to conclude that they were reasonably and necessarily incurred.  These expenses, totaling $17,028.04, must be disallowed.

There are also two payments for $200.00 made on January 6 and 14, 2010, which the Court finds should be excluded. One was paid to the "Clerk United States..." for "Lovelace Ad..." and one was paid to the Barrett Law Office, ..." for "Penthouse C...." These descriptions are insufficient for the Court to conclude that these expenses were reasonably and necessarily incurred. Also, the timing and amount of these expenses suggest that they may have been application fees for two attorneys' admission to the United States Court of Appeals for the Fifth Circuit for purposes of the interlocutory appeal in this matter. To the extent that either represents attorney court admission fees, such expenses constitute general overhead or operating costs, rather than an expense traditionally billed to a client.

As for a $139.00 check to InData Corporation on February 11, 2010, for Trial Director, the Court finds that the description supplied is not adequate for the Court to ascertain whether this expense was reasonably and necessarily incurred. It is unclear from the detail provided whether this is overhead, operating cost expense, or a recoverable expense. The Court must therefore disallow this $139.00 expense.

The New KLG report also includes a check for $250.00 dated January 20, 2011, to "Brian Bechtel" for "DML to Jacks...." The Court cannot ascertain from this limited description whether this is a recoverable expense. Accordingly, the Court will exclude this expense. The Court will also exclude two payments of $2,000.00 on March 3, 2011, to paralegals Carolyn Mirick and Sterling Brown Starns. The descriptions provided, which simply read "Penthouse," are insufficient for the Court

to conclude that these expenses were reasonably and necessarily incurred by Plaintiff in the prosecution of this case.

In sum, the Court will reduce Plaintiff's requested reimbursement of expenses from the New KLG report by a total $21,817.04.  Plaintiff has shown that the remainder of the entries on the New KLG report were expenses reasonably and necessarily incurred.  The Court will award expenses to Plaintiff from the New KLG report totaling $100,126.88, reduced from the $121,943.92 requested.

### (2).  Old KLG Report

The Old KLG report contains payments which were made to law offices both previously and presently involved in this litigation, including a $580.22 check to "David Nutt & Associat..." on May 20, 2008, for "Penthouse Exp..."; a $1,562.65 check to Hesse & Butterworth for "Penthouse Exp..."; a $516.39 check to Gary Yarborough on July 16, 2008, for "Penthouse Rei..."; and a $1,995.00 check to Barrett Law Office, P.A., on December 15, 2008, for "Britton Depositi...."   With respect to the first three entries, the Court cannot determine the nature of the charges or whether they were reasonably and necessarily incurred in this case.  Nor can the Court discern whether any of the last three entries are duplicative of entries from the firms' individual expense sheets provided to the Court *in camera*, which will be discussed in separate subsections below.  These four expenses totaling $4,654.26 will be excluded.

The Court will also disallow a $351.05 payment to Ray Deloteus on July 16, 2008.  The memo line reads "Penthouse Exp...."  Mr. Deloteus was the President of Penthouse at the time of Hurricane Katrina.  While Mr. Deloteus was designated by

Plaintiff as a valuation expert on October 14, 2008, Pl.'s Expert Designation [218], at p. 1, it is unclear why he received this July 2008 payment. The description is insufficient for the Court to conclude that it was reasonably and necessarily incurred by Plaintiff.

The Court will therefore reduce Plaintiff's reimbursement of expenses from the Old KLG report by $5,005.31. Plaintiff has shown that the remainder of the entries on the Old KLG report were expenses reasonably and necessarily incurred. The Court will award expenses to Plaintiff from the Old KLG report totaling $24,756.32, reduced from the $29,761.63 requested.

### (3).   CONDOS Report

Entries on the "CONDOS" report total $36,719.10 in expenses. Plaintiff has demonstrated that these expenses were all reasonably and necessarily incurred, with the exception of one entry for $29.84, on April 23, 2006, which was over a year before the Complaint was filed. The description provided is "Scruggs - FedEx  #354." From this description, the Court is unable to ascertain whether this expense was reasonably and necessarily incurred. The Court will therefore reduce Plaintiff's recovery on the CONDOS report and award expenses to Plaintiff from the CONDOS report totaling $36,689.26.

### b.   Barrett Law Office, P.A.

Plaintiff has supplied the Court with a six-page expense report from the Barrett Law Office, P.A., totaling $70,734.30. However, Plaintiff requests $70,519.44 in reimbursement. The Court has thoroughly reviewed the submitted

expense report and finds that the expenses on this report were reasonably and necessarily incurred by Plaintiff and are reimbursable as extra-contractual damages, except for a $351.91 entry on January 10, 2011, for paralegal Carolyn Mirick to "travel to director training."  The Court finds that this training related travel expense is akin to an office expense attributable to the cost of doing business, which would not normally be billed to a client.  Subtracting this entry from the total of $70,734.30, leaves $70,382.39 in reasonably and necessarily incurred expenses.

### c.    *Hesse & Butterworth*

Plaintiff supplied the Court with a list of expenses from Hesse & Butterworth which simply identifies four broad categories of expenses and lists corresponding amounts, totaling $9,428.53.  The four categories are "Filing Fees," "Printing," "Process Service," and "Internal Copying."  The Court cannot find that these descriptions are of sufficient detail to ascertain whether these expenses were reasonably and necessarily incurred in this litigation.  The Court must therefore exclude the $9,428.53 in expenses from Hesse & Butterworth.

### d.    *Thrash Law Firm*

Plaintiff submitted an eight-page expense report for Mr. Thrash.  The report contains a "Grand Total" of $18,759.37.  However, Plaintiff has only requested reimbursement for $2,845.88 with respect to the Thrash Law Firm.  It is unclear if certain reimbursements from KLG represent the other $15,913.49 in the report.[6]

---

[6]The Court disallowed $16,294.04 paid to Thomas Thrash by the KLG on the New KLG report.

However, having reviewed the provided expense reports, the Court is of the opinion that Plaintiff has demonstrated that $2,845.88 worth of expenses were reasonably and necessarily incurred by Thrash Law Firm and are reimbursable to Plaintiff.

###### e.   *Lovelace Law Firm, P.A.*

Plaintiff has submitted a chart from the Lovelace Law Firm, P.A. containing nine broad categories of expenses incurred over a period fourteen months.  According to the chart, Lovelace Law Firm incurred expenses in nine of those months, from June 2010 through February 2011, in four of the delineated categories, totaling $7,904.92.  These four broad categories are "Internal Copies," "Telephone," "Postage/Express Delivery/Messenger," and "Travel/Meals."  The Court finds that insufficient detail has been provided for it to conclude in this case that Plaintiff reasonably and necessarily incurred these expenses.  Accordingly, the Court must excise these $7,904.92 in expenses.

###### f.   *Summary of Expenses*

In sum, the Court finds that some of Plaintiff's expenses cannot be allowed. Plaintiff will be awarded a total of $234,800.73 in expenses.[7]

### C.   Interest

Plaintiff seeks to recover prejudgment and post-judgment interest in this case. Plaintiff requests a rate of 8% for prejudgment interest, compounded annually,

---

[7]The Court also notes that some of the expenses submitted by and awarded to Plaintiff, such as witness fees paid by the KLG, fall within the definition of "costs" under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  In the event Plaintiff files a bill of costs pursuant to L.U. Civ. R. 54(c), Plaintiff is reminded not to include the cost of any item sought and awarded here in its bill of costs.

beginning sixty days after August 30, 2005, the date of Hurricane Katrina. Underwriters respond that, under Mississippi law, "an award of prejudgment interest in this case should begin at a date the Judge deems fair, but no earlier than the date the Plaintiff's complaint was filed – April 24, 2007." Resp. [425], at p. 24. Underwriters state that "Plaintiff delayed filing suit for nearly year [sic] following Underwriters' denial letter on July 12, 2006." *Id.* They also argue that "it would be unfair to hold Underwriters responsible for prejudgment interest for the entirety of time this case has been pending." *Id.* at p. 25.

Underwriters next insist that applying an 8% rate would afford Plaintiff a windfall under the circumstances. *Id.* at p. 26. They point out that "[t]he purpose of prejudgment interest is only to make the Plaintiff whole, not to serve as a penalty to the defendant." *Id.* at pp. 26–27 (citing *Sunburst Bank v. Keith*, 648 So. 2d 1147, 1153 (Miss. 1995)). Underwriters suggest that

> any award of prejudgment interest should be assessed at the federal rate, calculated as simple interest, from a date that is no earlier than the date the Plaintiff filed its complaint, also taking into account the time period this case was on appeal to the Fifth Circuit which was decided in Underwriters' favor, and any delays occasioned by the Plaintiff.

*Id.* at p. 27.

Plaintiff replies that "Mississippi law . . . provides that in breach of contract cases, the Court may award prejudgment interest running from the date of the breach." Reply [429], at p. 9. The breach of contract here occurred on October 29, 2005, sixty days after the claim was reported. *Id.* at p. 10. Alternatively, Plaintiff argues that "[t]he breach certainly occurred no later than July 11, 2006, when

-36-

Underwriters denied the claim with no arguable basis." *Id.* Plaintiff also claims that it "pressed this case forward with diligence," and that it was Underwriters who sought an interlocutory appeal of Judge Senter's Order. *Id.* Plaintiff maintains that it "was forced to oppose the appeal and was successful insofar as the motion for summary judgment on the contract claim." *Id.* Plaintiff thus contends that Underwriters should be responsible for prejudgment interest during this time period. *Id.*

"In diversity cases, issues of prejudgment interest are governed by state law." *Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, 177 F.3d 326, 339 (5th Cir. 1999). Prejudgment interest is not imposed as a penalty for wrongdoing. Rather, it is allowed as compensation for the detention of money overdue. *Moeller v. American Guarantee and Liability Ins. Co.*, 812 So. 2d 953, 958 (Miss. 2002) (quoting *Preferred Risk Mut. Ins. Co. v. Johnson*, 730 So. 2d 574, 577 (Miss. 1998)). "Stated another way, 'prejudgment interest compensates for the time value of money, and thus is often necessary for full compensation.'" *In re Guardianship of Duckett v. Duckett*, 991 So. 2d 1165, 1182 (Miss. 2008) (quoting *Motion Picture Ass'n of Am. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992)). Prejudgment interest may be awarded from the date of the breach of the insurance contract. *See Arcadia Farms Partnership v. Audubon Ins. Co.*, 2011 WL 1252174, *5 (Miss. Ct. App. April 5, 2011).

Mississippi Code § 75-17-7 provides that

All judgments or decrees founded on any sale or contract shall bear interest rate at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the

complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

Miss. Code § 75-17-7.

At issue here is an insurance contract, which contained no interest rate.

Mississippi Code § 75-17-1(1) provides that

[t]he legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum, calculated according to the actuarial method, but contracts may be made, in writing, for payment of a finance charge as otherwise provided by this section or as otherwise authorized by law.

Miss. Code § 75-17-1(1).

The Mississippi Supreme Court has recently explained that "[t]he common-law rule is that 'when interest is allowable, it is to be computed on a simple rather than compound basis in the absence of an express authorization otherwise.'" *Pursue Energy Corp. v. Abernathy,* 2011 WL 5027134, *7 (Miss. Oct. 13, 2011) (quoting *Greenville Riverboat, LLC v. Less, Getz & Lipman, P.L.L.C.*, 131 F. Supp. 2d 842, 849 (S.D. Miss. 2000)). However, "'according to the actuarial method' has the technical meaning that interest be computed at the specified rate, compounded annually." *Id.* (citing *Stovall v. Illinois Gulf Railroad Co.*, 722 F.2d 190 (5th Cir. 1984)).

Because the Court finds that compensation is warranted for the detention of money overdue, and that Underwriters breached their insurance contract with Plaintiff by at least July 12, 2006, when they denied Plaintiff's claim in its entirety, the Court will award prejudgment interest on Plaintiff's $1,832,602.20 in contract damages commencing on that date and continuing to the date of Final Judgment.

The Court is of the opinion that an appropriate prejudgment interest rate is 8% per annum, compounded annually, from July 12, 2006, through the date of entry of Judgment.  Therefore, the appropriate prejudgment interest to be awarded Plaintiff in this case is $954,245.31.

Plaintiffs are entitled to post-judgment interest from the date of judgment. *Watson v. Callon Petroleum Co.*, 632 F.2d 646, 649 (5th Cir. 1980).  The Court will award post-judgment interest on the entire Judgment from the date of Final Judgment until paid, at the federal statutory rate prescribed by 28 U.S.C. §1961.

### III.  CONCLUSION

Based upon the foregoing, the Court will grant in part and deny in part Plaintiff's Motion for Attorneys' Fees, Expenses, and Interest [418].  Plaintiff is entitled to recover reasonable attorneys' fees of $1,922,487.25, expenses of $234,800.73, and prejudgment interest of $954,245.31, for a total of $3,111,533.29 in extra-contractual damages, in addition to post-judgment interest at the statutory rate as prescribed by 28 U.S.C. §1961.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, Plaintiff Penthouse Owners Association, Inc.'s, Motion for Attorney Fees, Expenses, and Interest [418], filed on March 23, 2011, is **GRANTED IN PART AND DENIED IN PART**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated herein, Plaintiff is awarded $3,111,533.29 in total extra-contractual damages, plus post-judgment interest on the entire Judgment from the date of Final Judgment

until paid, at the statutory rate as prescribed by 28 U.S.C. §1961. The Court will enter a separate Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, because the Court finds that Plaintiff's billing and expense records, which have been provided to the Court *in camera*, contain sensitive and privileged information, including but not limited to attorney-client privilege and attorney work product information, the Clerk of Court is directed to file these records into the record, as a separate document, under seal for the Court's access only.

**SO ORDERED AND ADJUDGED**, this the 21st day of December, 2011.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE